```
 1              UNITED STATES DISTRICT COURT
                  DISTRICT OF CONNECTICUT
 2

 3   _____
                                    )
 4   JAMES CONCANNON,               )
                                    ) No. 3:21-cv-01678-JBA
 5              Plaintiff,          )
                                    ) March 15, 2022
 6   v.                             )
                                    ) 2:44 p.m.
 7                                  )
     LEGO SYSTEMS INC., and         ) 141 Church Street
 8   LEGO A/S,                      ) New Haven, Connecticut
                                    )
 9              Defendants.         )
     _____)
10

11

12             TELEPHONIC PRE-FILING CONFERENCE

13

14

15   B E F O R E:

16
             THE HONORABLE JANET BOND ARTERTON, U.S.D.J.
17

18

19

20

21

22

23

24             Official Court Reporter:
               Corinne T. Thomas, RPR
25             (203) 809-0848
```

```
1    A P P E A R A N C E S:

2    For the Plaintiff:

3          JAYARAM LAW GROUP
                125 S. Clark
4               Suite 1175
                Chicago, IL 60603
5               (312) 736-1227
                E-mail:  Liz@jayaramlaw.com
6          BY:  ELIZABETH AUSTERMUEHLE, ESQ.

7          CANTOR COLBURN LLP - HTFD
                20 Church Street, 22nd Floor
8               Hartford, CT  06103
                (860) 286-2929
9               E-mail:  Ngeiger@cantorcolburn.com
           BY:  NICHOLAS ANDREW GEIGER, ESQ.
10

11   For the Defendants:

12         DAY PITNEY LLP - HTFD-CT
                242 Trumbull Street
13              Hartford, CT 06103
                (860) 275-0100
14              E-mail:  Apulaski@daypitney.com
           BY:  ANDRAYA PULASKI BRUNAU, ESQ.
15

16

17

18

19

20

21

22

23

24

25
```

```
 1            THE COURT:  Good afternoon, counsel.
 2            MS. AUSTERMUEHLE:  Good afternoon, Your
 3  Honor.
 4            THE COURT:  We are here on Concannon versus
 5  LEGO Systems Inc., 21-cv-1678.
 6        May I please have appearances starting with the
 7  plaintiff?
 8            MR. GEIGER:  Good afternoon, Your Honor.
 9  This is Nicholas Geiger from Cantor Colburn.  I'm
10  joined by co-counsel who will be doing most of the
11  speaking for my client.  I'll let them introduce
12  themselves.
13            MS. AUSTERMUEHLE:  Good afternoon, Your
14  Honor.
15            THE COURT:  I'm sorry.  I did not catch the
16  name.
17            MR. GEIGER:  I'm sorry, Your Honor.  Nicholas
18  Geiger.
19            THE COURT:  And who are you then introducing?
20            MR. GEIGER:  I was going to let them
21  introduce themselves.
22            THE COURT:  Okay.
23            MS. AUSTERMUEHLE:  Good afternoon, Your
24  Honor.  This is Elizabeth Austermuehle and I'm here
25  with my colleague, Michael Nosanchuk, and we're on
```

1    behalf of plaintiff, James Concannon.

2         MS. BRUNAU:  Good afternoon, Your Honor.

3    This is Andraya Brunau on behalf of defendant, LEGO

4    Systems Inc., and I'm joined by my colleague, Emily

5    Ferriter Russo, who's a first-year associate who is

6    joining me just to listen in this afternoon.

7         THE COURT:  Very well.  The counsel who is

8    joining Ms. Austermuehle does not seem to have an

9    appearance.

10         MS. AUSTERMUEHLE:  Yes.  Michael Nosanchuk is

11    just listening in as well.  He does not have an

12    appearance.  I'm sorry, Your Honor.

13         THE COURT:  All right.  So we have our

14    primary purpose is a pre-filing conference, but there

15    is also pending without objection Mr. Concannon's

16    motion for alternative service on the parent

17    corporation of LEGO, LEGO A/S, and there's no

18    objection.  What I don't recall being identified in

19    the motion was what was the alternative service

20    proposed.

21         MS. AUSTERMUEHLE:  Your Honor, the proposed

22    service was via e-mail on to counsel for LEGO who has

23    appeared already in the case.

24         THE COURT:  LEGO A/S?

25         MS. AUSTERMUEHLE:  LEGO Systems who is

1   currently represented by counsel on the line.  We

2   propose serving LEGO A/S via e-mail.

3          THE COURT:  All right.  And that is without

4   objection; is that correct, Ms. Brunau?

5          MS. BRUNAU:  Thank you, Your Honor.  So we

6   hope to address it today if Your Honor was so

7   inclined.  I think we had calculated the time period

8   to file a written objection to the extent our client

9   who has appeared, LEGO Systems Inc., could file a

10  written objection this Friday, but I'm prepared to

11  just kind of address some deficiencies that the

12  current defendant who has appeared noted in the

13  motion to the extent it's helpful to Your Honor.

14         THE COURT:  Okay.  Go ahead.

15         MS. BRUNAU:  So it was news to me, as Your

16  Honor pointed out, that -- what exactly the means of

17  alternative service being requested was.  I didn't

18  see a means in a motion.  I'm now understanding that

19  it's service, I guess, on Day Pitney on behalf of

20  LEGO A/S.  We were not trying to be difficult in

21  declining the waiver for service.  At no point have

22  we actually received a proper written request for

23  waiver of service that complies with a very specific

24  requirement set forth in Rule 4(d).  We did respond

25  within the 30 days outlined in the federal rules with

1    respect to LEGO Systems Inc., but they had already

2    gone ahead and initiated service.

3         And with respect to LEGO A/S, which they note

4    in their motion is a parent company of LEGO Systems

5    Inc., there hasn't been any articulation either in

6    the motion or the complaint as to why that entity is

7    being named as a proposed defendant.  And so we had

8    reached out to ask for a proper request for waiver of

9    service with the waiver form and just for an

10   explanation because we wanted to avoid time delays

11   and expense of naming a defendant that really, you

12   know, we're scratching our heads to figure out what

13   their relationship is to this case.

14        As Your Honor knows, there's not enough in this

15   circuit to just be named as a defendant simply

16   because you're a parent of another entity, and LEGO

17   A/S is a Danish company with a principal place of

18   business in Billund, Denmark.  There's no allegations

19   in the first amended complaint that would warrant

20   specific personal jurisdiction.  And under the

21   current tests in this circuit, being a Danish company

22   with a principal place of business in Denmark, we

23   weren't seeing a basis for general jurisdiction

24   either in looking at the motion.

25        So we were really just trying to figure out why

1  were you naming LEGO A/S.  If the theory was we're

2  looking for an entity that does X, it would be

3  helpful to know that so that we could avoid the time

4  and expense of appearing-- moving to dismiss for lack

5  of personal jurisdiction and engaging in some type of

6  additional discovery.  We could figure out who does

7  X, what that correct entity is, and instead, we

8  haven't received any explanation there.

9       So I disagree with many of the statements in

10  the motion about our office's motivation or the

11  client's motivation and I don't see that any of the

12  cited cases on page 5 of that motion support the

13  request for means of alternative service e-mail just

14  because our office has filed an appearance on behalf

15  of LEGO Systems Inc., which is a Delaware corporation

16  with a principal place of business in Connecticut,

17  just because there's been some media articles, I

18  guess, in Denmark that they think should connect LEGO

19  A/S which has no other connection to this case on

20  notice.

21       THE COURT:  All right.  Let me then turn back

22  to Ms. Austermuehle.  What paragraph in the first

23  amended complaint do you point to as setting out LEGO

24  A/S's liability?

25       MS. AUSTERMUEHLE:  Yes, Your Honor.  And you

1   know, I just feel like we're putting the cart a

2   little bit before the horse here because, of course,

3   LEGO A/S is allowed to make any jurisdictional

4   arguments that it wishes to make, but at this point,

5   we're just talking about waiver of service.  And so I

6   would say that the complaint itself is alleged

7   against both LEGO Systems Inc. and LEGO A/S and, you

8   know, generally alleged copyright liability against

9   these entities and there are various theories whether

10  that be vicarious liability or contributory liability

11  that, you know, we would explore through discovery.

12        But at this point, all we know is that LEGO,

13  LEGO's U.S. entity as well its Danish parent company,

14  has created and sold this product that infringes on

15  our client's copyright.  And then in terms of a

16  specific paragraph, paragraph 13 of the amended

17  complaint does allege personal jurisdiction over LEGO

18  A/S.

19        THE COURT:  All right.  Now, I guess what I'm

20  not -- so Ms. Brunau, the various arguments that you

21  are raising that a corrected waiver form has not been

22  filed but there is an articulation of A/S's liability

23  and that it's a Danish corporation housed in Denmark,

24  I'm not quite sure how that addresses the motion for

25  alternative service.

1       MS. BRUNAU:  Your Honor, if I might, so with

2  respect to the motion for alternative service, I

3  agree that, you know, the primary argument is there

4  hasn't been a request for waiver of service that

5  complies with Rule 4(d) which has very specific

6  requirements, you have to attach a certain number of

7  copies of the complaint, the summons, an actual

8  waiver form that the party can execute, you have to

9  provide at least 30 days for a response.  We haven't

10  received anything that fits those specific

11  requirements.

12       And if you look at the pieces cited at I guess

13  page 5 that they say supports their argument that

14  serving Day Pitney via e-mail is appropriate service

15  on LEGO A/S, these are all pieces with very different

16  facts than what we have here.  It's talking about

17  individual defendants personally evading marshals, an

18  action by the U.S. Government for money laundering

19  being brought against service companies where the

20  U.S. Government actually did serve a proper request

21  for waiver of service that met the 4(d) requirement,

22  and service on a Russian LLC where the Hague

23  Convention procedures were, I guess, suspended for

24  some time in 2008 where Russia said they wouldn't

25  cooperate with the U.S. courts.

1      So to meet the burden of showing that

2  alternative service is warranted, the arguments in

3  the motion and the cases just don't support that.

4  And so I think the other points I was making just

5  kind of go to the bigger picture here which is this

6  is really just an attempt to burden shift and put

7  costs -- you know, avoid costs on behalf of the

8  plaintiff, that they're entitled to just name an

9  entity in a complaint that articulates no theory of

10 liability with respect to that defendant and then not

11 have to go through the process of serving them

12 because they would just rather e-mail counsel for

13 another defendant that is U.S. based.  It's just -- I

14 don't see how that comports with due process or how

15 any of the arguments in their motion show that that's

16 not the case and it's warranted here.

17      THE COURT:  All right.  Ms. Austermuehle, did

18 you want to give some -- I'll hear you, but did you

19 want to give some consideration to re-serving a

20 waiver request and making sure that all requirements

21 have been met?

22      MS. AUSTERMUEHLE:  Yes, Your Honor.  We would

23 be happy to do that.  We believe we did serve a

24 waiver request on -- I think it was February 21st

25 properly on counsel, but we would be happy to serve a

1   waiver request again with, you know, multiple copies

2   of the complaint attached if that is what their

3   objection is.

4        I would just say that my understanding is that

5   their objection is not merely based on the fact that

6   a proper waiver request wasn't provided.  It's more

7   that they believe there is no liability against the

8   parent company and they don't want, you know, to have

9   to file a motion to dismiss, and, you know, we

10  obviously disagree and we're just trying to move this

11  lawsuit forward efficiently.

12       And so instead of having to take the months it

13  would take to go through the Hague Convention on

14  service, to require service on a Danish company

15  because counsel has, you know, obviously been

16  speaking to LEGO A/S because they said as much in

17  their e-mails, we thought we could short circuit that

18  by just providing service in an efficient and, you

19  know -- a much more faster way than the Hague, but

20  yes.  We would be happy to re-serve a waiver request

21  under Rule 4 on counsel.

22       THE COURT:  All right.  Now, we might need to

23  return to that.  So given that, it doesn't seem to me

24  that it makes sense to require anybody to respond to

25  your motion for alternative service at this time,

1  does it?

2        MS. AUSTERMUEHLE:  I'm happy to defer to Your

3  Honor on that.  If LEGO A/S or LEGO would like to

4  respond, I don't have an objection to that, but if

5  Your Honor feels like you've heard enough on this

6  call, that's perfectly fine with me.

7        THE COURT:  Well, so I don't have opposition,

8  but in anticipation of getting opposition from

9  Ms. Brunau that says the waiver request isn't perfect

10 but you're going to perfect it, I'm seeing a lot of

11 extra work being done that might not otherwise have

12 to be done.

13       Ms. Brunau, how shall we proceed?

14       MS. BRUNAU:  Your Honor, I think it sounded

15 like counsel was agreeable to serving the requests

16 for waiver with the 4(d) requirements.  I think that

17 would solve the instant problem in their motion for

18 alternative service.

19       I guess, you know, thinking big picture to the

20 extent that counsel's also able to articulate a

21 theory of liability as to LEGO A/S, because I don't

22 see any allegations in the complaint other than that

23 they -- in paragraph 13 on information and belief

24 continuously and systematically do business in

25 Connecticut, which to me isn't a theory of liability,

```
 1    it would be helpful to know that only in the spirit
 2    of cooperation and knowing that if what they're
 3    seeking is we want the LEGO group of companies'
 4    entity that does X, we could assist in identifying
 5    that company and get a proper request for waiver of
 6    service as to that entity so as to avoid this problem
 7    of additional work on the Court of moving to dismiss
 8    for lack of jurisdiction on LEGO A/S.
 9         I understand if counsel for plaintiff is not
10    ready to do that at this time or Your Honor would
11    rather defer that until we have the proper request
12    for waiver under Rule 4(d), but thinking big picture,
13    I guess that would just be helpful to me because it
14    may save the parties and the Court a lot of time down
15    the road.
16         THE COURT:  Okay.  We're going to have a
17    pre-filing conference on LEGO Systems' motion, so
18    that it's intended and set out in -- the motion to
19    dismiss is set out in docket number 16, and what the
20    purpose of the pre-filing conference includes is to
21    give the non-moving party the opportunity to amend
22    the challenged pleading in hopes of being efficient
23    about meeting the moving party's concerns and/or
24    producing a final amended complaint against which the
25    motion to dismiss can be directed with the
```

```
 1    understanding that having been advised of what the
 2    grounds for a motion to dismiss will be and having
 3    been given the opportunity to amend to meet those
 4    grounds, that then if the motion to dismiss is
 5    granted, it would not lie.
 6         That said, what about this, what about the
 7    plaintiff proceed with his intent to serve his waiver
 8    request in full compliance with Rule 4 as he
 9    interprets it.  Will you be accepting that waiver?
10         MS. BRUNAU:  As for our client, I don't have
11    an answer as to that from LEGO A/S today.  But as
12    soon as I receive it, I will present it to them and
13    get back to counsel as quickly as I can.
14         THE COURT:  Okay.  Why don't you do that?
15    Why don't we -- Ms. Austermuehle, let's have you
16    serve it right away and then let's hold off on the
17    LEGO A/S's response to your motion for alternative
18    service for 14 days after you serve that waiver
19    request.
20         MS. AUSTERMUEHLE:  Okay.
21         THE COURT:  Okay.  And then if they're going
22    to waive, then that's fine and we don't need this
23    motion for alternative service.  If they are not, we
24    will get their opposition in 14 days, and then if you
25    have a reply, that would be in seven days and we can
```

1   then just rule.  Okay.  Why don't we leave it that

2   way.

3        Now, let's hear the grounds for the intended

4   motion to dismiss the first amended complaint as it

5   currently stands.

6        MS. BRUNAU:  Thank you, Your Honor.  So with

7   respect to the first amended complaint, we do

8   anticipate moving to dismiss Count 1 for copyright

9   infringement on a number of grounds.  The first

10  ground is that the LEGO group has a license to Antoni

11  Porowski's likeness, and Antoni Porowski is a chef

12  and character host of sorts on the *Queer Eye* show on

13  Netflix who received a Mackage leather jacket adorned

14  with two-dimensional drawings created by the

15  plaintiff and he wore it on the show, to various

16  public engagements, et cetera.

17       And in creating the Queer Eye Fab 5 LEGO set,

18  it features the five actors and host of that set and

19  their likenesses.  And so the minifigure figurine for

20  Mr. Porowski has two outfits, one of which is a

21  leather jacket which the plaintiffs have -- the

22  plaintiff has alleged infringes on Mr. Concannon's

23  copyright in those two-dimensional drawings.

24       So the primary argument is the copyright

25  infringement claim fails to state a claim because the

```
1    LEGO group has a license, both an expressed license
2    through the production company to Mr. Porowski's
3    likeness as well as what we think is a very strong
4    argument for an implicit license under the Solid Oaks
5    case that came out within this circuit in 2020.
6         The second argument for dismissal of the
7    copyright infringement claim involved just an
8    examination at this stage from the pictures in the
9    first amended complaint that the two works at issue,
10   Mr. Concannon's claimed artwork on the leather jacket
11   and the LEGO minifigure figurine decorations are not
12   substantially similar.
13        And the third argument for dismissal of the
14   first count is that any use of certain elements on
15   the minifigure figurine jacket that are -- that could
16   be construed as similar to Mr. Concannon's artwork
17   squarely falls underneath the fair use doctrine as a
18   transformative fair use.  There's two cases that we
19   would point to for that which would be the Solid Oaks
20   case, which dealt with tattoos on NBA players and
21   there was a claim of copyright infringement for those
22   tattoos in a later video game that came out with
23   their likenesses, as well as the Easter Limited
24   decision which came out a few months ago in the
25   circuit.
```

1          The second two claims, this Count 2 asserts a

2    claim newly added for federal trade dress

3    infringement and unfair competition under the Lanham

4    Act.  And as we read the cases within that circuit,

5    there's two critical flaws there.  One is that Mr.

6    Concannon has not pled the necessary elements for

7    protectable trade dress.  The allegations in the

8    complaint about what the asserted trade dress are are

9    just far too general under the *Cardinal Motors*

10   decision which came out less than a year ago and

11   others as well as the fact that he hasn't in the

12   first amended complaint asserted all the elements to

13   make a prima facie for trade dress.  There's no

14   indication of acquired distinctiveness and there's

15   also no indication for allegations of likelihood of

16   confusion.

17          The third count is really a derivative claim.

18   It's for a violation of the Connecticut Unfair Trade

19   Practices Act and under the *Garden Catering* decision,

20   that should be dismissed as well because it's wholly

21   premised on Counts 1 and 2 for copyright and

22   trademark infringement.

23          And so we feel we have a very strong motion to

24   dismiss the first amended complaint on behalf of

25   defendant LEGO Systems Inc.

1          THE COURT:  And there are only three counts?

2          MS. BRUNAU:  Yes, Your Honor.

3          THE COURT:  All right.  So Ms. Austermuehle,

4    you understand what the grounds are intended to be.

5    Would you like the opportunity to consider amending

6    your complaint to best address any or all of the

7    deficiencies, and if so, how much time would you like

8    to do that?

9          MS. AUSTERMUEHLE:  Your Honor, I'm struggling

10   a little bit with regard to the trademark claim in

11   particular because they're just saying that we

12   haven't pled the necessary elements, but I don't know

13   -- you know, there are a lot of ways for us to plead

14   necessary elements, so I'm wondering what their

15   argument actually is, you know.  So on that one, I

16   feel like I would like to see their motion before we

17   decide to amend or not because I still am not

18   entirely sure.

19         THE COURT:  I'm trying to do it the other way

20   around.  So let me just give Ms. Brunau the

21   opportunity to expand on the -- it's the grounds, the

22   trademark count that you are not understanding what

23   the basis is; is that correct?

24         MS. AUSTERMUEHLE:  Correct.  And I would also

25   add that for substantial similarity, I think that the

1    grounds that they've identified are also too vague.

2    There is no substantial similarity without

3    identifying, you know, why they think that.

4          THE COURT:  Okay.  So let me ask you,

5    Ms. Brunau, what's missing in the allegations in

6    Count 3 that you say fail to allege all the prima

7    facie elements?

8          MS. BRUNAU:  Sure.  I think it falls into

9    kind of two buckets, Your Honor.  One is -- the first

10   element is you have to protectable trade dress.  And

11   so here if you look at paragraphs 17 and 18 of the

12   first amended complaint, this is Mr. Concannon's

13   current effort to identify what he thinks is

14   protectable trade dress, and so language such as use

15   of provocative tongue-in-cheek phrases and

16   hand-painted graffiti-style lettering, our review of

17   case law in this circuit is that where similar

18   subjective phrases like the ones you have in

19   paragraph 17 and 18 are what the plaintiff is holding

20   out as their assertive trade dress, that that falls

21   utterly short of protectable trade dress, so you

22   can't, therefore, establish the first element of a

23   claim for trade dress infringement.

24         It's also unclear to us if the asserted trade

25   dress is singular or asserted trade dress in a

1    product line.  But to the extent that the asserted

2    trade dress is intended to be trade dress in a

3    product line under those cases, the allegations of

4    paragraph 17 and 18 are deficient.

5         THE COURT:  And why is that?

6         MS. BRUNAU:  If you look at the *Cardinal*

7    *Motors* decision which came out last May, the Courts

8    have said that a party asserting trade dress has to

9    give specifics.  And so it's impossible to know if

10   you're a defendant whether a work would potentially

11   infringe the trade dress where the definition of it

12   is something as subjective and broad as what's used

13   here which is provocative tongue-in-cheek phrases.

14        I mean, there's an unlimited number of

15   combination of words that could conceivably fit

16   within that piece.  And same thing with hand-painted

17   graffiti-style lettering, I mean, there's a whole

18   class of works that can be registered as registered

19   trade dress under that category.

20        And so these types of broad-bucket identifiers,

21   I guess, in paragraph 17 and 18 make it impossible

22   for someone to know if their work is potentially

23   infringing and we think don't comport with the case

24   law in terms of unregistered trade dress where Courts

25   at the motion to dismiss stage have found a party's

1   asserted valid trade dress.

2        THE COURT:  All right then.  Ms.

3   Austermuehle, does that help you understand your work

4   to amend the complaint if you choose to do so?

5        MS. AUSTERMUEHLE:  Yes, Your Honor.  On the

6   protectable trade dress argument, I understand their

7   argument now.  I think counsel also represented that

8   they believe we failed to plead acquired

9   distinctiveness and likeliness of confusion

10  sufficiently as well.  So if I could have -- to the

11  extent that is the case, I would appreciate any other

12  arguments that they intend to make on the trade dress

13  claim.

14       THE COURT:  Okay.  The distinctiveness

15  argument, does that reflect that in full?

16       MS. BRUNAU:  I can provide more color for

17  that, Your Honor, if it would be helpful to counsel.

18  I don't have specific -- a specific paragraph number

19  here to give you, Ms. Austermuehle, other than to say

20  that aside from kind of passing references that

21  there's certain celebrities, I guess, who

22  commissioned various clothing items, I didn't see

23  anything in the first amended complaint where it was

24  an affirmative allegation about the distinctiveness

25  of the service trade dress, whether it's just one

1    item or a line of products or any allegations that

2    consumers have been confused.

3         And with respect to the second point, I'll

4    clarify that consumers either have been confused or

5    are likely to be confused as to the source of the

6    jacket worn on the specific LEGO minifigure figurine,

7    there's some, I guess, general references in the

8    first amended complaint to third parties making

9    knock-off T-shirts that are not at issue in this

10   complaint that were also created by Mr. Concannon,

11   but I haven't seen any allegations in the first

12   amended complaint that would state a sufficient claim

13   that there's likely to be confusion or is actual

14   confusion with respect to the jacket worn on Antoni

15   Porowski's minifigure figurine in the Fab 5 set.

16        THE COURT:  All right then.  How much time,

17   Ms. Austermuehle, would you like to consider amending

18   your complaint to meet these forthcoming grounds for

19   dismissal?

20        MS. AUSTERMUEHLE:  Your Honor, am I able to

21   ask for time and then consult internally with my team

22   and with our client as to our actual decision or do I

23   need to commit right now that we will amend?

24        THE COURT:  No.  You do not have to commit.

25   I'm just giving you a period of time to consider

1   amending or actually amending.

2        MS. AUSTERMUEHLE:  Okay.  Thank you, Your

3   Honor.  Then I would request 14 days if that's

4   acceptable.

5        THE COURT:  So we will get your amended

6   complaint, if any, in 14 days.  And then following

7   the filing or not filing of the amended complaint --

8   of any further amended complaint, how much time would

9   the defendant wish for filing the motion to dismiss?

10       MS. BRUNAU:  Your Honor, so I have the

11  14 days.  I guess we'll know by March 29th if there

12  is a second amended complaint.  So I guess working

13  off that date, if we could have until April 22nd to

14  respond, if that's acceptable to Your Honor, I think

15  that would be helpful just because it's hard to know

16  at this point whether we'll be working with the same

17  allegations or some amount of new allegations.

18       THE COURT:  All right.  And then we'll get

19  opposition in 21 days.  We'll get reply in 14 days.

20  And then we have a mix of papers and we'll find that

21  an oral argument would be of assistance and I'll let

22  you know when I propose to schedule that.

23       All right.  Now, is there any way that we can

24  use this schedule to -- I guess this is a bit

25  premature.  I was going to try -- if A/S does not

1    waive service but instead -- oh, I'm going to get the

2    opposition, if any, to alternative service -- I'll

3    just wait.  Never mind.  I guess I can't combine the

4    two even though counsel is sort of suggesting what

5    the grounds would be for a motion to dismiss.  Okay.

6    We'll have to do this --

7         MS. AUSTERMUEHLE:  Your Honor, if I may, I'm

8    just curious, like, given the process that Your Honor

9    has, after we file an amended complaint, if any, and

10   LEGO Systems Inc. files a motion to dismiss, are we

11   at that point not allowed to amend when we see the

12   full recitation of their arguments?

13        THE COURT:  You should not see in their

14   motion anything that goes beyond the general

15   parameters of what they are claiming here.

16        MS. AUSTERMUEHLE:  Okay.  On the record here?

17        THE COURT:  Yes.  And that is the whole

18   purpose here is that the moving party has to

19   articulate in general what the grounds are, maybe not

20   all the specific chapter and verse, but we're not

21   going to get some other motion to dismiss for a lack

22   of personal jurisdiction or something like that.

23   Okay?

24        MS. AUSTERMUEHLE:  Okay.  Thank you, Your

25   Honor.

1    THE COURT:  So your amended complaint will be

2    the one that they direct their motion to dismiss to.

3    If they believe that what you have done is -- if you

4    have, in fact, augmented the factual allegations, it

5    may cause all of their motion to drop out.  I wanted

6    to look back to the claims that defendant makes that

7    they can't prevail on their copyright claim because

8    there's a license, how am I supposed to know the

9    license from the four corners of the complaint?

10    MS. BRUNAU:  Your Honor, I think there's two

11    versions of that argument.  So one, I think squarely

12    within the four corners of the complaint, if we

13    accept as true for purposes of the motion those

14    allegations under the *Solid Oaks* case, I believe

15    there should be no issue finding an implicit license.

16    With respect to the argument about the

17    expressed license, that we believe is incorporated by

18    reference such that Your Honor could consider the

19    actual, you know, contractual license agreement at

20    the motion to dismiss stage because in the original

21    complaint, there's a number of paragraphs that refer

22    to some settlement discussions between plaintiff's

23    counsel and counsel for LEGO Systems Inc. where we

24    discussed the existence of that written license

25    agreement to counsel and they then summarized those

1   conversations in the complaint.

2        So we understand that the complaint has been

3   amended; however, at the motion to dismiss stage,

4   those allegations of the original complaint don't

5   just vaporize and go away.  They are still part of

6   the record.

7        THE COURT:  Okay.  Got it.  All right.  Is

8   there anything else that we can take up at this point

9   that would make this efficient?  There's just the two

10  counts of the complaint, is that -- that's not true.

11  There's a CUTPA claim.

12       MS. BRUNAU:  Yes.  There's a third count

13  which is essentially incorporated into the trademark

14  claim or very similar to the trademark claim.

15       THE COURT:  So you are challenging all counts

16  of the complaint including the CUTPA complaint count?

17       MS. BRUNAU:  Yes, Your Honor.

18       THE COURT:  Okay.

19       MS. BRUNAU:  I might just add, I understood

20  where Your Honor was going with trying to tie LEGO

21  A/S somehow into this, but I guess to the extent that

22  a second amended complaint is filed by March 29th, my

23  understanding is that that will be the final

24  complaint as to LEGO Systems Inc., but then to the

25  extent that LEGO A/S either waives service or is

1    served by some other means, there will be a second

2    pre-filing conference for LEGO A/S.  So there may be,

3    I guess, a potential third amended complaint after we

4    have that conference.

5         THE COURT:  I would hope that plaintiff's

6    counsel would have listened closely to the

7    anticipated grounds if A/S is included, the no

8    liability just by virtue of being a parent, et

9    cetera, and would include in the next amended

10   complaint everything they want to say about A/S and

11   we may be able to shortcut it that way.  But there

12   will need to be -- if there is no waiver, if I allow

13   alternative service, and once service is made and the

14   clock starts ticking to respond, we would then need a

15   pre-filing conference if that's what A/S chooses to

16   do to challenge the complaint.  And yes, arguably,

17   there may be a third amended complaint, but I don't

18   see any way around it to keep at least a portion of

19   this moving, but the third amended complaint would

20   presumably be only addressed to allegations against

21   A/S.

22        MS. BRUNAU:  Thank you, Your Honor, for the

23   clarification.  That's helpful.

24        THE COURT:  All right.  Anything else that we

25   can take up?  You have -- let me see.  I have a 26(f)

1    report from you or is --

2            MS. BRUNAU:  Your Honor, we provided a draft

3    to plaintiff's counsel last evening and I believe

4    they responded they were going to give us our copy

5    today and I believe it's due to Your Honor on either

6    the 29th or the 30th, so right around the time the

7    amended complaint either would or would not be filed.

8            THE COURT:  Okay.  All right then.  I will

9    await that and we'll see what the schedule looks like

10   there and we will see whether or not we need to

11   include either in proceeding before me a scheduling

12   conference or do that separately.  Okay.  Very good.

13   Anything else?

14           MS. AUSTERMUEHLE:  Not from plaintiff, Your

15   Honor.

16           MS. BRUNAU:  None from the defendant.  Thank

17   you.

18           THE COURT:  Okay.  The only requirement in

19   this case is going to be that when you do appear, you

20   have to bring a lot of toys.  Whether or not they

21   have much to do with the motion, it will be a joyful

22   change of tenor in the courtroom.  Okay.  Thank you

23   very much.

24           (Proceedings adjourned, 3:25 p.m.)

25

```
 1               C E R T I F I C A T E

 2

 3      RE:   JAMES CONCANNON v. LEGO SYSTEMS INC.
                  No. 3:21-cv-01678-JBA
 4

 5

 6          I hereby certify that the within and

 7   foregoing is a true and accurate transcript taken in

 8   the aforementioned matter to the best of my skill and

 9   ability.

10

11            /s/ Corinne T. Thomas

12            CORINNE T. THOMAS, RPR
              Official Court Reporter
13            United States District Court
                 141 Church Street
14            New Haven, Connecticut 06510
                 (203) 809-0848
15

16

17

18

19

20

21

22

23

24

25
```