# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

JAMES CONCANNON,

PLAINTIFF,

-AGAINST-

LEGO SYSTEMS, INC. AND LEGO SYSTEM A/S,

DEFENDANTS.

Civ. Action No.: 3:21-cv-01678

**THIRD AMENDED COMPLAINT**

**JURY TRIAL DEMANDED**

## THIRD AMENDED COMPLAINT

Plaintiff James Concannon, by and through his attorneys at Jayaram Law, Inc., brings this action against Defendants LEGO Systems, Inc. and LEGO System A/S (collectively "LEGO"), and for his Third Amended Complaint alleges as follows:

## NATURE OF THE ACTION

1.     This is an action for infringement and unfair competition against LEGO, arising from LEGO's unauthorized use and commercial exploitation of American artist James Concannon's intellectual property.

2.     James Concannon is a multi-disciplinary artist and designer based in Connecticut and New York.  LEGO is the largest toy company in the world, with annual revenue of over $5 billion.

3.     In 2018, Concannon created a custom leather jacket (the "Concannon Jacket") as a gift for Antoni Porowski, one of the stars of Netflix's *Queer Eye* series and a fan of Concannon's work.  The Concannon Jacket features Concannon's original artwork as well as his signature trade dress.

4.      In September 2021, LEGO announced the release of a "Queer Eye – The Fab 5 Loft" LEGO set, which is based on the *Queer Eye* Netflix series.  The Fab 5 Loft set includes a "LEGO version" of the Concannon Jacket—in other words, a blatant copy of Concannon's original creation.  A side-by-side comparison of the Concannon Jacket and LEGO's knockoff version (the "Infringing Product") is depicted below:



| *The Concannon Jacket* | *LEGO's Infringing Product* |
|---|---|

5.      Despite admitting that it intentionally copied the Concannon Jacket when it developed the Fab 5 Loft set, LEGO did not offer to compensate Concannon for copying his creation, did not ask Concannon's permission to copy his creation, and did not give Concannon any credit when it did copy his creation.  Instead, it offered to send Concannon a free Fab 5 Loft set—which retails for $99.99—for Concannon's six-year-old son to play with, only to later revoke that offer, telling Concannon that LEGO does not give away its products for free.

6.      Concannon is a working artist with a serious medical condition who supports himself and a young child through his work.

7.      Concannon brings this action to hold LEGO accountable for its blatant disregard for his intellectual property rights and to recover damages for LEGO's willful infringement.

## PARTIES

8.      Upon information and belief, Defendant LEGO Systems, Inc. is a Delaware corporation with its place of business at 555 Taylor Road, Enfield, CT 06082.

9.      Upon information and belief, Defendant LEGO System A/S is a private corporation with its place of business at Aastvej 1, Dk-7190, Billund, Denmark.

10.      Upon information and belief, LEGO A/S directly or indirectly owns the entire share capital in Defendant LEGO Systems, LEGO System A/S, and other subsidiaries formed around the world ("LEGO Subsidiaries").

11.      Upon information and belief, Defendant LEGO System A/S uses and controls the LEGO Subsidiaries to conduct business activities that include development, manufacturing, advertising, and distribution.

12.     Upon information and belief, LEGO System A/S uses and controls Lego Systems to conduct business activities that include marketing, advertising, distribution, and sales within the United States and within this District.

13.     Plaintiff James Concannon is an American citizen who resides in Connecticut.

**JURISDICTION AND VENUE**

14.     This civil action asserts claims arising under the Copyright Laws of the United States, 17 U.S.C. § 101 *et seq.*; the Lanham Act, 15 U.S.C. § 1125(a), and the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a.

15.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 1338(a).

16.     This Court has personal jurisdiction over Defendant LEGO Systems, Inc. because, on information and belief, it is a resident of this District with its principal place of business located within this District.   This Court has personal jurisdiction over Defendant LEGO System A/S because, on information and belief, it continuously and systematically does business in Connecticut.

17.     Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District, and Defendant LEGO Systems, Inc. resides in this District.

**FACTUAL BACKGROUND**

**James Concannon's Highly Distinctive Trade Dress**

18.     James Concannon is a multi-disciplinary artist who specializes in the infiltration and subversion of pop culture.   He is widely known for his use of propaganda as a form of forced societal reflection.   His work has been exhibited in galleries and featured on film and television and in magazines and art publications.

19.   Over the past decade, Concannon has achieved notoriety as the creator of a popular line of t-shirts, jackets, and accessories ("Concannon Products"), which are instantly recognizable as Concannon Products because they feature short, provocative statements in hand-painted, graffiti-style lettering.   Concannon Products, examples of which are pictured below, can be purchased through Concannon's website, https://www.jamesconcannonart.com/.



20.   The unique combination of provocative, tongue-in-cheek phrases relating to pop culture, with hand-painted, graffiti-style lettering on the Concannon Products (Concannon's "Trade Dress") is not only a hallmark of Concannon's aesthetic, but it also serves as a source identifier.   Consumers have come to associate this unique and distinctive combination of elements with Concannon Products, and Concannon specifically uses these elements to identify, promote, and solidify his brand in the eyes of the public.

21.     As a result, Concannon's use of provocative, tongue-in-cheek phrases relating to pop culture, in hand-painted, graffiti-style lettering on t-shirts and jackets is entitled to common law trademark and trade dress protection.  Clothing that embodies these elements are immediately recognizable to the public as Concannon Products.

22.     The look, feel, and aesthetic of each Concannon Product displaying the Trade Dress is consistent: each Concannon Product displaying the Trade Dress includes a provocative, and tongue-in-cheek phrase relating to pop culture in hand-painted, graffiti style lettering. The overall aesthetic and design of the Concannon Products displaying the Trade Dress is immediately recognizable and distinctive.

23.     Concannon's combination of provocative, tongue-in-cheek phrases relating to pop culture in hand-painted, graffiti style lettering is distinctive because no other artist or designer has released a line of clothing containing this unique combination of specific elements.

24.     Additionally, the Concannon Products displaying the Trade Dress are distinctive because they comment satirically on punk rock and pop culture, while also forming part of the culture, when worn and publicized by celebrities.

25.     The distinctiveness and source-identifying function of Concannon's Trade Dress is reinforced by the unsolicited attention Concannon Products have received in the media.

26.     For example, numerous celebrities—including Lady Gaga, Lil Wayne, Suki Waterhouse, Jaime King, and punk rock icons like Jimmy Webb and the band Death—have been photographed wearing and promoting Concannon Products:



27.   Celebrities who wear and promote Concannon Products in public often specifically identify James Concannon as the source of those Products, on social media and in interviews, as reflected by the images below.



28.     Concannon Products have also been featured in film and television shows, including the film *Native Son* and Netflix's *Queer Eye* series, for which Concannon has received significant media attention.

29.     In promoting the *Queer Eye* series, one of the show's stars, Antoni Porowski, frequently identifies James Concannon as the source of Concannon Products featured in connection with the show, as reflected by the image below.



30.     Concannon frequently receives orders, from celebrities and non-celebrities alike, for custom Concannon Products featuring Concannon's distinctive Trade Dress. Indeed, customers reach out with the expectation that any product they buy from Concannon will feature the Trade Dress.

31.     Custom Concannon Products prominently display Concannon's distinctive and popular Trade Dress with elements personal to the buyer. Concannon's Products all uniformly criticize mainstream pop culture through satirical phrases and puns handwritten in graffiti lettering. Concannon customizes pieces by choosing words or phrases that are tailored to a customer's interest.

32.     The Concannon Jacket was a custom piece that embodied the Trade Dress while incorporating elements personal to Mr. Porowski. For example, Concannon used the phrase "THYME IS ON MY SIDE" as a play on Mr. Porowski's interest in food and cooking.

33.     Concannon's ability to thoughtfully combined the Trade Dress with personal traits makes his custom pieces highly sought after and very valuable, often selling for hundreds or thousands of dollars.

34.     While Concannon sells or gifts his custom pieces, Concannon retains the copyrights to his designs and the Trade Dress in order to conduct business and maintain his distinct designs.

35.     Further underscoring the distinctiveness and value of Concannon's Trade Dress, numerous infringers have sought to capitalize on the strength of Concannon's brand by selling counterfeit versions of Concannon Products without Concannon's permission.  *See, e.g.*, Exhibits B-F.

36.     Based on all of the above, the Concannon Products have acquired distinctiveness and secondary meaning in the marketplace.

***Queer Eye*'s Authorized Uses of Concannon's Work**

37.     In June 2017, Concannon received an email from a clearance coordinator at ITV America, the producer of the new *Queer Eye* Netflix series, which was set to launch in early 2018. A reboot of the popular television show from the early 2000's, Netflix's *Queer Eye* would feature an all-new cast and new locations, while sticking to its predecessor's theme of providing style and home makeovers to help transform people's lives.

38.     In her 2017 email, ITV's clearance coordinator told Concannon that one of the *Queer Eye* cast members, Antoni Porowski, "would love to be able to" wear three Concannon Products—"Acid And Nancy Reagan," "The Crank Generation," and "Cry Me A River Phoenix"—at different times throughout the show's first season.  The email attached a release form, which Concannon signed, granting ITV America (on behalf of Netflix) the right to feature Concannon Products on the show.  The release also granted Netflix the right to display Concannon

Products in connection with the show's advertising.   A few months later, another ITV clearance coordinator reached out to Concannon, seeking his permission to add a fourth Concannon Product—"James Dean Speed Queen"—to the list of works that would be featured on the show. Concannon agreed.

39.     Through this exchange, Concannon learned that one of *Queer Eye*'s cast members, Antoni Porowski, was a fan of Concannon's work.  Concannon and Porowski connected through social media, met in person, and eventually became friends.

40.     Over the next couple of years, Concannon provided several custom Concannon Products to Porowski.  Each time a Concannon Product was going to be featured on the show, *Queer Eye*'s producers sought Concannon's permission and obtained a signed release specifying the Product that would appear on the show and the nature of the rights being granted.  Between 2017 and 2021, *Queer Eye*'s producers continued to feature Concannon Products on the show— and continued to seek Concannon's written permission for doing so.  The only time *Queer Eye* did *not* seek Concannon's permission to feature one of Concannon's creations on the show was in 2018, in connection with the work that is the subject of this lawsuit.

**Creation of the Concannon Jacket**

41.     In 2018, Concannon created a custom leather jacket (the "Concannon Jacket") and gifted it to Porowski.  The Concannon Jacket—one of many custom Concannon Products bearing Concannon's signature Trade Dress—was created using a plain black leather jacket that Porowski sent to Concannon, to which Concannon added his original artwork, composing and arranging each artistic element to reflect Concannon's signature style.   The artwork embodied in the Concannon Jacket, pictured below, is registered with the United States Copyright Office, as reflected by Reg. No. VA0002276952.  *See* Exhibit A.



42.   Concannon delivered the Concannon Jacket to Porowski in September 2018.

43.   The Concannon Jacket first appeared on *Queer Eye* in the first episode of the show's fourth season, which was released on Netflix in July 2019.  However, unlike previous and subsequent instances where Concannon Products were featured on the show, nobody contacted

12

Concannon to request his permission to feature the Concannon Jacket on the show.  Concannon figured this was simply an oversight on Netflix's part and was not disturbed.  He was happy to see his work featured on a show that, up until then, had always asked permission before displaying his works.  Concannon also appreciated that Porowski often credited him as the creator of the works that appeared on the show, an acknowledgment of the talent, hard work, and creativity that went into Concannon's creations.

44.     However, Concannon never granted Netflix a license to display the jacket on the show (as he had in previous instances where his works were featured on the show), and he certainly never agreed to allow LEGO—the largest toy company in the world, with over $5 billion in annual revenue—to commercially exploit his artwork for free.

45.     Yet that is exactly what LEGO did.

**LEGO's Intentional Copying of the Concannon Jacket**

46.     Upon information and belief, after viewing the Concannon Jacket on *Queer Eye,* LEGO System A/S and Lego Systems jointly conspired to create, advertise, and sell a LEGO set that directly copied the Concannon Jacket.

47.     On or around September 14, 2021, LEGO began marketing a new LEGO set, called "Queer Eye – The Fab 5 Loft," based on the *Queer Eye* Netflix series.  Upon information and belief, LEGO began selling the Fab 5 Loft set on October 1, 2021.

48.     The Fab 5 Loft set, which currently retails for $99.99, includes a virtually identical copy of the Concannon Jacket, as pictured below.

13

| *The Concannon Jacket* | *LEGO's Infringing Product* |
|---|---|
|  |  |
|  |  |

49.     As the above side-by-side comparison reflects, LEGO painstakingly copied not only the individual creative elements of the Concannon Jacket, but the unique placement, coordination, and arrangement of those individual artistic elements as well.

50.     In addition, LEGO's use of Concannon's distinctive Trade Dress—specifically, a tongue-in-cheek phrase prominently displayed in graffiti-style lettering on the back of the jacket— is likely to cause confusion as to whether Concannon is affiliated with or sponsored by LEGO.

51.     To the extent LEGO altered the original text on the back of the jacket, it did so in a way that is still intended to evoke Concannon's signature style and brand so that the Infringing Product would look like a Concannon Product and benefit from the association with Concannon's trademark. Indeed, LEGO altered the text in the same way that a genuine Concannon Product would, by customizing the phrase to evoke the "customer's" interests. Here, because LEGO creates blocks that are used to build things, the phrase "REBUILD THE WORLD" on the Lego version of the jacket, is exactly the type of pop culture pun that would be included on a genuine Concannon Product bearing the Trade Dress.

52.     LEGO's exploitation of the Concannon Trade Dress creates a false sense of affiliation or sponsorship between Concannon and LEGO. LEGO's actions were intended to, and are likely to, confuse the public as to Concannon's affiliation with LEGO and the Fab 5 Loft Set. This is based on the distinctiveness of the Concannon Trade Dress, the significant amount of unsolicited media attention that the Concannon Products receive, the near exact copying of the Concannon Jacket for purposes of the LEGO Fab 5 Loft Set, and LEGO's bad faith and willfulness in exploiting the Concannon Jacket for its own commercial gain.

53.     LEGO did not seek Concannon's permission—let alone offer to compensate Concannon—before exploiting Concannon's original artwork or Trade Dress in the global toy

market.  Indeed, LEGO did not even credit Concannon as the original creator of the Concannon Jacket.  It simply used it, in total disregard of Concannon's intellectual property rights as a working artist.

54.     It is indisputable that LEGO developed its Infringing Product by copying the Concannon Jacket and Concannon's Trade Dress.  Indeed, in a video that LEGO released to promote the Fab 5 Loft set, LEGO's Senior Graphic Designer states that Antoni "***has a really iconic leather jacket that we redid in LEGO version***."     *See* https://www.youtube.com/watch?v=RDGxA14iA7c  (at 4:28).   The video, which depicts the "LEGO version" of the Concannon Jacket for several seconds on screen, was posted on LEGO's official YouTube account and has been viewed over 100,000 times on YouTube.

55.     The video prominently features Matthew Ashton, LEGO Vice President of Design, and Diego Sancho, LEGO Senior Graphic Designer, discussing their involvement in developing and designing the *Queer Eye* set. Matthew Ashton and Diego Sancho are both employed by LEGO System A/S.

56.     LEGO has exploited the Concannon Jacket throughout its aggressive marketing of the Fab 5 Loft set, including on the very front of the box in which the Fab 5 Loft set is sold:



*See*  https://www.lego.com/en-us/product/queer-eye-the-fab-5-loft-10291?p=10291&cmp=social-n4r7lm-SHOP (last visited December 7, 2021).

57.     Upon information and belief, Defendants conspired to develop, design, advertise, manufacture, and distribute the Infringing Product.

58.     Upon information and belief, due to Defendants' actions, the Infringing Product was available worldwide through online and brick and mortar retailers.

59.    In addition to the creation, distribution, and sale of the Infringing Product throughout the world, LEGO has developed animated versions of the Concannon Jacket, which LEGO has used to promote the Fab 5 Set across social media.  A video posted to LEGO's official Twitter page depicts the Concannon Jacket in animated form:



*See* https://twitter.com/LEGO_Group/status/1437733080106782722?s=20 (last visited December 7, 2021).  The video has been viewed nearly 250,000 times.

**LEGO's Unwillingness to Accept Responsibility for Its Infringement**

60.    When Concannon learned of LEGO's infringement of the Concannon Jacket, he immediately reached out to the company.  After several calls to LEGO's customer service line to inquire about the company's use of his work, Concannon was told that LEGO "loves creators" and the switchboard operator offered to send him a free Fab 5 Loft set for his six-year-old son to play with.  When the set never arrived, Concannon called back and was told that the operator had made a mistake, and that LEGO does not give away its sets for free.

61.     Concannon's supporters encouraged him to find an attorney.  Through undersigned counsel, Concannon eventually sent a cease-and-desist letter to LEGO in which he demanded that LEGO take seriously his intellectual property rights as a working artist.

62.     Concannon hoped that perhaps LEGO had made an honest mistake, copied his work without realizing Concannon retained all copyrights and trademarks in the Concannon Jacket, and would offer to compensate Concannon or pay him a reasonable royalty that he could use to support his family and manage his type 1 diabetes, which requires him to rely on an insulin pump.

63.     Instead, lawyers for the company told Concannon's attorney that if Concannon brought a case against LEGO it would be an "uphill battle" arguing, in effect, that by gifting the Concannon Jacket to his friend Porowski knowing that Porowski would wear the jacket on *Queer Eye*, Concannon was granting an "implied license" to Netflix to use the jacket in any manner it pleased—including sub-licensing the work to LEGO, the largest toy company in the world, so that LEGO could mass-produce the work for the global toy market and retain all the profits for itself.

64.     Lawyers for the company also noted that they had listened to Concannon's recorded calls with LEGO's customer service team and insultingly suggested that Concannon was only asserting his legal rights after the fact because he was upset that he never received his free LEGO set.

65.     LEGO's response to Concannon's demand ignores basic principles of U.S. intellectual property law and demonstrates that LEGO cares more about its bottom line than the working artists who supply the creative lifeblood for industries like the one that LEGO dominates.

66.     Subsequent to LEGO's release of the Infringing Product, Concannon's business and livelihood have been threatened. Indeed, Concannon relies on the exclusivity and

distinctiveness of his designs in order to sell Concannon Products and promote his custom clothing business.

67.     Moreover, Concannon has received a significant amount of harassment and bullying from LEGO fanatics that condemn him for properly asserting his intellectual property rights against Defendants. The negative comments made online and on social media have been detrimental to Concannon's efforts to market and sell his designs.

68.     Thus, Concannon brings this action to hold LEGO accountable for its shameful theft of Concannon's intellectual property and to recover damages for LEGO's willful infringement.

**COUNT I:**
**DIRECT COPYRIGHT INFRINGEMENT**
**(17 U.S.C. § 101 *ET SEQ.*)**
**(AGAINST ALL DEFENDANTS)**

69.     Plaintiff incorporates and realleges Paragraphs 1 through 68 of this Complaint as if fully set forth herein.

70.     By their actions alleged above, Defendants have infringed and will continue to infringe upon Plaintiff's copyrights in the Concannon Jacket (Reg. No. VA0002276952) including by, among other things, copying, publicly displaying, distributing, and creating derivative works of the Infringing Product, which is substantially similar to, derive from and a derivative of Plaintiff's original artwork and design, without any authorization or other permission from Plaintiff.

71.     As alleged herein, Defendants had access to Plaintiff's original artwork and design before Defendants commenced their acts of infringement.

72.     Upon information and belief, Defendants' infringement of Plaintiff's copyrights has been deliberate, willful, and in utter disregard of Plaintiff's rights.

73.     Defendants will continue to realize unjust profits, gains, and advantages as a proximate result of their infringement if such infringement is permitted to continue.  Moreover, to the extent the infringement may cease, Defendants will continue to realize just profits, gains, and advantages by having initially attracted and secured consumers through their act of infringement.

74.     As a direct and proximate results of Defendants' willful copyright infringement, Plaintiff has suffered, and will continue to suffer, monetary loss to his business, reputation, and goodwill.  Plaintiff is entitled to recover from Defendants the damages he has sustained and will sustain, and any gains, profits, and advantages obtained by Defendants because of their act of infringement and use, publication, and distribution of the copied artwork and design.  At present, the amount of such damages, gains, profits, and advantages cannot be fully ascertained by the Plaintiff but will be established according to proof at trial.

75.     Plaintiff is also entitled to recover from Defendants statutory damages and attorneys' fees for Defendants' willful infringement of his copyright.

76.     Plaintiff is further entitled to an injunction restraining the Defendants, their agents and employees, and all persons acting in concert or participation with it, from engaging in any further such acts in violation of the Copyright Act.

**COUNT II:**
**CONTRIBUTORY COPYRIGHT INFRINGEMENT**
**(AGAINST LEGO SYSTEM A/S)**

77.     Plaintiff incorporates and realleges Paragraphs 1 through 76 of this Complaint as if fully set forth herein.

78.     Upon information and belief, LEGO A/S directly or indirectly wholly owns Defendant LEGO System A/S, Lego Systems, and a multitude of other subsidiaries located around the world.

79.     Upon information and belief, Defendant LEGO System A/S is an affiliate of Defendant Lego Systems.

80.     Upon information and belief, LEGO System A/S employees, including Matthew Ashton and Diego Sancho, designed the Infringing Product and assisted in creating the unauthorized replica of the Concannon Jacket.

81.     Upon information and belief, Defendant LEGO System A/S jointly worked with Defendant LEGO Systems to design, develop, manufacture, advertise, and distribute the Infringing Product.

82.     Upon information and belief, Defendant LEGO System A/S directed the LEGO Subsidiaries to assist in the creation and sale of the Infringing Product.

83.     By their actions as alleged above, Defendants have infringed and will continue to infringe upon Plaintiff's copyrights in the Concannon Jacket (Reg. No. VA0002276952) including by, among other things, copying, publicly displaying, distributing, and creating derivative works of the Infringing Product, which is substantially similar to, derive from and a derivative of Plaintiff's original artwork and design, without any authorization or other permission from Plaintiff.

84.     As alleged herein, Defendants had access to Plaintiff's original artwork and design before Defendants commenced their acts of infringement.

85.     Upon information and belief, Defendants' infringement of Plaintiff's copyrights has been deliberate, willful, and in utter disregard of Plaintiff's rights.

86.     Defendants were notified of the specific infringing use of the Concannon Jacket in a cease and desist sent by undersigned counsel to Lego Systems and LEGO A/S and failed to act

to prevent future infringing uses. Accordingly, Defendants actually and constructively knew of the copyright infringement occurring with respect to the Infringing Product.

87.     Upon information and belief, Defendant LEGO System A/S had the obligation and ability to control and stop the infringing activity, yet they failed to do so. Rather, it assisted in the infringement and continues to profit from it.

88.     Upon information and belief, Defendant LEGO System A/S has permitted, encouraged, and allowed Defendant LEGO Systems and the LEGO Subsidiaries to manufacture and distribute the Infringing Products without regard to copyright ownership.

89.     Defendants' conduct constitutes contributory copyright infringement that this Court may remedy under Sections 106 and 501 of the Copyright Act.

90.     As a direct and proximate result of Defendants' conduct, Plaintiff has suffered, and will continue to suffer, monetary loss to his business, reputation, and goodwill.  Plaintiff is entitled to recover from Defendants the damages he has sustained and will sustain, and any gains, profits, and advantages obtained by Defendants because of their act of infringement and use, publication, and distribution of the copied artwork and design.  At present, the amount of such damages, gains, profits, and advantages cannot be fully ascertained by the Plaintiff but will be established according to proof at trial.

91.     Plaintiff is also entitled to recover from Defendants statutory damages and attorneys' fees for Defendants' willful infringement of his copyright.

92.     Plaintiff is further entitled to an injunction restraining the Defendants, their agents and employees, and all persons acting in concert or participation with it, from engaging in any further such acts in violation of the Copyright Act.

**COUNT III:**
**VICARIOUS COPYRIGHT INFRINGEMENT**
**(AGAINST LEGO SYSTEM A/S)**

93.     Plaintiff incorporates and realleges Paragraphs 1 through 92 of this Complaint as if fully set forth herein.

94.     Upon information and belief, Defendants collaborated on designing, producing, advertising, distributing, and selling the Infringing Product and specifically copied the Concannon Jacket in an effort to lure customers and fans of Mr. Porowski.

95.     Upon information and belief, LEGO System A/S received direct financial benefits from the infringement through profits, gains, and advantages by having initially attracted and secured consumers through their act of infringement.

96.     Upon information and belief, LEGO System A/S has the right and ability to supervise, control and/or otherwise restrict LEGO Systems from releasing designs that infringe upon the intellectual property of other authors.

97.     Upon information and belief, LEGO System A/S has failed to adequately police Lego System and the LEGO subsidiaries with respect to engaging in infringing conduct. Rather, LEGO System A/S has participated in and encouraged the sale of the Infringing Product to their own benefit.

98.     Defendant LEGO System A/S was notified of the infringing use of the Concannon Jacket in a cease and desist sent by undersigned counsel and failed to act to prevent future infringing uses. Accordingly, Defendant LEGO System A/S actually and constructively knew of the copyright infringement occurring with respect to the Infringing Product.

99.     Defendants' conduct constitutes vicarious copyright infringement that this Court may remedy under Sections 106 and 501 of the Copyright Act.

100.     As a direct and proximate result of Defendants' conduct, Plaintiff has suffered, and will continue to suffer, monetary loss to his business, reputation, and goodwill.  Plaintiff is entitled

to recover from Defendants the damages he has sustained and will sustain, and any gains, profits, and advantages obtained by Defendants because of their act of infringement and use, publication, and distribution of the copied artwork and design.  At present, the amount of such damages, gains, profits, and advantages cannot be fully ascertained by the Plaintiff but will be established according to proof at trial.

101.   Plaintiff is also entitled to recover from Defendants statutory damages and attorneys' fees for Defendants' willful infringement of his copyright.

102.   Plaintiff is further entitled to an injunction restraining the Defendants, their agents and employees, and all persons acting in concert or participation with it, from engaging in any further such acts in violation of the Copyright Act.

**COUNT IV:**
**FEDERAL TRADE DRESS INFRINGEMENT AND UNFAIR COMPETITION**
**15 U.S.C. §1125(A)**

103.   Plaintiff incorporates and realleges Paragraphs 1 through 102 of this Complaint as if fully set forth herein

104.   Since as early as 2013, Concannon has used the Concannon Trade Dress in connection with Concannon Products.

105.   Concannon's unique combination of provocative, tongue-in-cheek phrases related to pop culture, with hand-painted, graffiti-style lettering serves as a brand identifier, is distinctive of Concannon Products, and is non-functional.

106.   Concannon's Trade Dress has acquired secondary meaning and are distinctive in the marketplace. Concannon's Trade Dress are source identifiers for products that originate with Concannon.

107.   Concannon has common law trade dress rights in his unique combination of provocative, tongue-in-cheek phrases related to pop culture with hand-painted, graffiti-style

lettering by virtue of his continuous use of these elements in commerce throughout the United States since 2013 in connection with the sale of Concannon Products.

108.    LEGO's actions described above, including its manufacture, sale, offer for sale, display and distribution of the Infringing Product, are likely to cause confusion with Concannon Trade Dress by creating a false sense of sponsorship or affiliation between LEGO and Concannon.

109.    Accordingly, LEGO's actions constitute common law trademark and trade dress infringement and misappropriation of Concannon's goodwill under the common law of Connecticut and other states.

110.    Upon information and belief, the actions of LEGO described above have at all times relevant to this action been willful.

111.    As a direct and proximate result of the actions of LEGO alleged above, Concannon has been damaged and will continue to be damaged.

112.    Concannon has suffered and will continue to suffer irreparable harm from LEGO's infringing acts, unless LEGO's infringement is enjoined.

## COUNT V:
## VIOLATION OF THE CONNECTICUT UNFAIR TRADE PRACTICES ACT
### (CONN. GEN. STAT. § 42-110A, *ET SEQ.*)

113.    Plaintiff incorporates and realleges Paragraphs 1 through 112 of this Complaint as if fully set forth herein

114.    By engaging in the acts alleged above, LEGO has willfully and maliciously engaged in conduct offensive to public policy, governing statutes, common law principles, and established concepts of fairness

115.    LEGO's willful and malicious conduct was and is immoral, unethical, oppressive, and unscrupulous.

116.    LEGO's conduct has caused and will continue to cause substantial injury to Concannon and to the public interest.

117.    LEGO committed such acts, and continues to commit such acts, in the conduct of trade or commerce.

118.    Concannon has suffered, and if LEGO is not enjoined will continue to suffer, an ascertainable loss of money or property as a result of LEGO's actions.

119.    By virtue of the conduct above, LEGO has engaged in unfair competition and unfair or deceptive acts or practices in the conduct of trade or commerce in violation of the Connecticut Unfair Trade Practices Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter a judgment against Defendants, and grant the following relief:

A.    For a declaration that Defendants have infringed upon Plaintiff's copyright in the Concannon Jacket;

B.    For a declaration that Defendants have infringed upon Plaintiff's Trade Dress;

C.    For a declaration that the foregoing acts of infringement were willful;

D.    For a declaration that Defendants must render a full and complete accounting to Plaintiff for Defendants' profits, gains, advantages, or the value of business opportunities received from the foregoing acts of infringement;

E.    For an award of damages for all damages suffered by the Plaintiff and for any profits or gain by Defendants attributable to infringement of Plaintiff's copyrights and/or Trade Dress in amounts to be determined at trial;

F.      For an award of statutory damages to Plaintiff based upon Defendants' willful acts of infringement pursuant to Copyright Laws, 17 U.S.C. § 101 *et seq.*;

G.      For an award to Plaintiff of their reasonable attorneys' fees, expenses, and costs incurred in this action under 17 U.S.C. § 505, 15 U.S.C. § 1117(a), and Conn. Gen. Stat. § 42-110g;

H.      For an award of pre-judgment and post-judgment interest; and,

I.      For any such other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Concannon demands trial by jury for all issues that are so triable.

DATED:  June 13, 2022      BY:      */s/ Vivek Jayaram*
Vivek Jayaram (*pro hac vice*)
Elizabeth Austermuehle (p*ro hac vice*)
vivek@jayaramlaw.com
liz@jayaramlaw.com
JAYARAM LAW, INC.
142 West 57th Street
11th Floor
New York, New York 10019
Telephone: (212) 287-5638

Steven Coyle (CT 21039)
Nicholas Geiger (CT 28060)
Katherine Tassmer (CT 31098)
scoyle@cantorcolburn.com
ngeiger@cantorcolburn.com
ktassmer@cantorcolburn.com
Cantor Colburn LLP
20 Church Street, 22nd Floor
Hartford, CT 06103
Telephone: (860) 286-2929

*Attorneys for Plaintiff James Concannon*