UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JAMES CONCANNON,<br><br>    Plaintiff,<br><br>    v.<br><br>LEGO Systems, Inc. and<br>LEGO System A/S,<br><br>    Defendants. | Civil Action No. 3:21-CV-1678 (OAW)<br><br><br><br><br><br><br><br>February 28, 2025 |

### *REDACTED* DEFENDANTS LEGO SYSTEMS, INC. AND LEGO SYSTEM A/S' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Elizabeth A. Alquist
Andraya Pulaski Brunau
Caitlin M. Barrett
Day Pitney LLP
Goodwin Square
225 Asylum Street
Hartford, CT 06103
Telephone: (860) 275-0137
Facsimile:  (860) 881-2456
*eaalquist@daypitney.com*
*abrunau@daypitney.com*
*cbarrett@daypitney.com*

*Attorneys for Defendants LEGO Systems, Inc. and LEGO System A/S*

-i-

**Table of Contents**

**Page**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ........................................................................................................................ 2

    I.     Concannon Granted an Implied, Non-Exclusive License to Porowski .......................... 2

    II.    The LEGO Group's Limited Use of the Porowski Jacket is Fair Use ........................... 4

    III.   Concannon's Trade Dress Claims Fail as a Matter of Law ........................................... 8

    IV.  Concannon's CUTPA Claim Fails as Matter of Law .................................................... 10

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Andy Warhol Found. for the Visual Arts v. Goldsmith*,
   598 U.S. 508 (2023)...........................................................................................................5

*Authors Guild, Inc. v. HathiTrust*,
   755 F.3d 87 (2d Cir. 2014)................................................................................................5

*Authors Guild v. Google, Inc.*,
   804 F.3d 202 (2d Cir. 2015)...........................................................................................6, 7

*Bill Graham Archives v. Dorling Kindersley Ltd.*,
   448 F.3d 605 (2d Cir. 2006)...........................................................................................6, 7

*Blanch v. Koons*,
   467 F.3d 244 (2d Cir. 2006)..............................................................................................7

*Campbell v. Acuff-Rose Music, Inc.*,
   510 U.S. 569 (1994)...........................................................................................................5

*Capri Sun GmbH v. Am. Beverage Corp.*,
   595 F. Supp. 3d 83 (S.D.N.Y. 2022)..................................................................................9

*EBIN N.Y., Inc. v. SIC Enter., Inc.*,
   No. 1:19-CV-01017, 2023 WL 6141275 (E.D.N.Y. Sept. 20, 2023) .................................2

*Hachette Book Grp., Inc. v. Internet Archive*,
   115 F.4th 163 (2d Cir. 2024) .....................................................................................5, 6, 7

*Harp v. King*,
   835 A.2d 953 (Conn. 2003) .............................................................................................10

*Inwood Lab'ys, Inc. v. Ives Lab'ys, Inc.*,
   456 U.S. 844 (1982)...........................................................................................................8

*Jewish Sephardic Yellow Pages, Ltd. v. DAG Media, Inc.*,
   478 F. Supp. 2d 340 (E.D.N.Y. 2007) .............................................................................10

*Kelley v. Morning Bee, Inc.*,
   No. 1:21-CV-08420, 2023 WL 6276690 (S.D.N.Y. Sept. 26, 2023) .................................5

*Laureyssens v. Idea Grp., Inc.*,
   964 F.2d 131 (2d Cir. 1992)..............................................................................................9

*LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*,
　209 F. Supp. 3d 612 (S.D.N.Y. 2016), *aff'd*, 720 F. App'x 24 (2d Cir. 2017) ........................... 9

*Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*,
　269 F.3d 114 (2d Cir. 2001) ................................................................................................... 4

*RiseandShine Corp. v. PepsiCo, Inc.*,
　No. 23-1176-CV, 2024 WL 5165388 (2d Cir. Dec. 19, 2024) ................................................. 8

*Savin Corp. v. Savin Grp.*,
　391 F.3d 439 (2d. Cir. 2004) ................................................................................................... 9

*Sherwood 48 Assocs. v. Sony Corp. of Am.*,
　76 F. App'x 389 (2d Cir. 2003) ............................................................................................... 8

# INTRODUCTION[1]

The Opposition relies on rhetoric, distortions, and red herrings because neither the facts nor the law are on Concannon's side. The Opposition and Concannon's Local Rule 56(a)(2) Statement demonstrate that there are no true issues of disputed *material* facts as to the LEGO Group's affirmative defenses or Concannon's trade dress claims.

The following undisputed facts are material to the LEGO Group's implied license and fair use defenses (Fourth and Fifth Affirmative Defenses):

- Concannon created the decorations on the Porowski Jacket *at Porowski's request* (Pl. SOF ¶ 42) knowing that Porowski intended to wear it on *Queer Eye* (Defs. Resp. ¶ 6);

- Concannon conveyed the Porowski Jacket to Porowski with "no strings attached." (Pl. SOF ¶ 42);

- At the time of the conveyance, Concannon was aware of how to limit use of his products, having previously signed releases (Pl. AF ¶ 38.; Defs. Resp. ¶ 38);

- The LEGO Group had a license to Porowski's likeness (Pl. SOF ¶ 10);

- Porowski wore a black leather jacket in the opening sequence of *Queer Eye*, in promotional material for *Queer Eye*, and in public appearances (*Id.* ¶¶ 16–17);

- Porowski wore the Porowski Jacket frequently on *Queer Eye* and promotional media (*Id.* ¶¶ 45–46);

- Scout approved the design of the Subject Torso Element (*Id.* ¶ 19);

- The Subject Torso Element does not include four of the nine adornments embodied in the '952 Copyright (*Id.* ¶¶ 22, 59); and

- The remaining adornments on the Subject Torso Element are the LEGO Group's own intellectual property or in the public domain (*Id.* ¶¶ 24–26).

These undisputed material facts satisfy both tests for implied license and demonstrate the LEGO

---

[1] Citations to **"Defs. SOF"** refer to the LEGO Group's Local Rule 56(a)(1) Statement of Facts in Support of its Motion (ECF No. 117). Citations to **"Pl. SOF"** refer to Concannon's Local Rule 56(a)(2) Statement in Opposition to the Motion (ECF No. 131.) Citations to **"Pl. AF"** refer to Concannon's Statement of Additional Facts in Support of its Opposition to the Motion (*id.*). Citations to **"Defs. Resp."** refer to the LEGO Group's Response to Plaintiff's Statement of Additional Facts, filed concurrently with this reply.

Group had transformative purposes in creating the Subject Torso Element, defeating Counts I–III. Faced with these undisputed facts, the Opposition resorts to "smoke and mirror" tactics by twisting the LEGO Group's arguments and interjecting *immaterial* facts in an attempt to create disputes regarding the LEGO Group's knowledge, intent, and purpose. These tactics do not satisfy Concannon's burden to "do more than simply rely on the . . . allegations in [his] complaint and go beyond the pleadings to designate specific facts showing that there is a genuine issue for trial." *EBIN N.Y., Inc. v. SIC Enter., Inc.*, No. 1:19-CV-01017, 2023 WL 6141275, at *4 (E.D.N.Y. Sept. 20, 2023) (quotation marks and alterations omitted).

As for Concannon's trade dress claim (Count IV), the Opposition fails to show the necessary connection between the asserted trade dress and Concannon; put differently, there is no admissible evidence demonstrating the asserted trade dress serves to identify *Concannon* as the products' *source*. This is required to find secondary meaning. The Opposition also fails to adduce evidence to support a finding of a likelihood of confusion. Lacking this evidence, this claim fails.

Concannon's tag-along CUTPA claim (Count V) fails because Count IV fails. Alternatively, the intra-corporate conspiracy doctrine bars Count V.

## ARGUMENT

**I.     Concannon Granted an Implied, Non-Exclusive License to Porowski.**

The undisputed *material* facts (*supra* at 1–2) show a clear meeting of the minds between Concannon and Porowski—there were "no strings attached" to Porowski's use of the jacket—satisfying both the more stringent and more permissive implied license tests.[2] Mem. at 9-10; Pl. SOF ¶ 42. Unable to disavow Concannon's damning testimony, the Opposition attempts to survive

---

[2] That is, Concannon created the Porowski Jacket at Porowski's request, with knowledge Porowski would wear the Porowski Jacket on *Queer Eye*, and conveyed it to Porowski with "no strings attached" despite his awareness of how to limit use of a Concannon product. *Supra* at 1-2.

summary judgment and create a triable issue by distorting the LEGO Group's arguments, injecting immaterial facts, and resorting to *reductio ad absurdum* logic. These attempts fail on their face.

Concannon attempts to reframe the LEGO Group's argument—that Concannon granted an implied, non-exclusive license to *Porowski* to use the Porowski Jacket with "no strings attached"—by drawing attention to licenses that Concannon avers he did not grant to unnamed "Parties," namely, Scout Productions, Inc. ("Scout") and ITV America ("ITV"), the production companies for *Queer Eye*. Opp. at 5–6. Extraneous licenses that Concannon did/did not grant have no bearing on the Motion. If anything, they show Concannon knew how to limit use of his products, and could have done so when he conveyed the Porowski Jacket to Porowski.

Concannon's argument that there was no "meeting of the minds" because he could not have foreseen that the LEGO Group would create the Set is a non sequitur. The LEGO Group does not assert an implied license between *Concannon and the LEGO Group*.[3] There is no dispute that the LEGO Group had no knowledge of Concannon until he filed this action, and no dispute that Concannon did not know of the Set until it was announced. Pl. SOF ¶¶ 21, 47. Neither fact is relevant to the implied, non-exclusive license between *Concannon and Porowski*. In any event, it is undisputed that the LEGO Group had a license from Scout to Porowski's likeness, which included the Porowski Jacket as part of Porowski's James Dean aesthetic.[4] In a desperate attempt to create a triable issue, Concannon cites hearsay (third-party communications between Scout and

---

[3] Concannon's argument regarding prior licenses that he granted to ITV also falls flat. Opp. at 5. The prior licenses with ITV are irrelevant to whether there was a meeting of the minds *between Concannon and Porowski*. In any event, the prior releases put forward by Concannon show that (1) Concannon knew how to limit use of his products at the time of conveyance, (2) prior licenses granted to ITV permitted ITV, *inter alia*, to create derivative works of his products shown on *Queer Eye* and to grant sublicenses, and (3) despite such knowledge, Concannon conveyed the Porowski Jacket to Porowski with no limits on its use. Pl. AF ¶ 9 (citing Pl. Ex. 13 Materials Release).

[4] The Opposition does not meaningfully address the LEGO Group's argument that leather jackets, and the Porowski Jacket specifically, are a part of Porowski's celebrity likeness as he appeared on *Queer Eye*. To that end, Concannon's attempts to distinguish *Solid Oak Sketches* falls short. Opp. at 10–12.

IMG) to speculate about the LEGO Group's knowledge and intent in designing the Subject Torso Element. Defs. Resp. ¶¶ 22–23. Not only are these communications inadmissible, and thus inappropriate to consider at summary judgment, *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 269 F.3d 114, 123 (2d Cir. 2001), but these third-party communications are not probative of the LEGO Group's knowledge or intent. Indeed, it is undisputed that the LEGO Group had no knowledge of Concannon at the time it designed the Subject Torso Element and believed it had a license to use the Porowski Jacket in the Set. Pl. SOF ¶ 21; Defs. Resp. ¶ 19. The record is clear that the LEGO Group sought, and received, approval from Scout for the Subject Torso Element.[5]

Finally, Concannon's slippery slope argument (Opp. at 7–8, n.1)—that all hope is lost for clothing designers who lend celebrities an article of clothing for one event—fails as it required Concannon to change the facts. This case is not about a celebrity sublicensing any piece of designer clothing they purchase or own. Concannon created *custom* adornments on a jacket already owned by Porowski at Porowski's request, in the same way that an individual commissions a tattoo artist to ink a tattoo. The law is clear that in handing the decorated Porowski Jacket back to Porowski with "no strings attached," there were no limits on Porowski's use of the jacket, though Concannon was aware of limitations on use (*e.g.*, Pl. AF ¶¶ 19, 38) and could have limited Porowski's use at the time of conveyance. He admittedly did not. There is no risk to other rightsholders by acknowledging the implied, non-exclusive license from Concannon to Porowski.

## II.    The LEGO Group's Limited Use of the Porowski Jacket is Fair Use.[6]

Concannon's fair use argument is weak across all four fair use factors. Notably, there is no dispute that: (1) the Subject Torso Element and the Porowski Jacket were created with different

---

[5] For this same reason, no reasonable jury could find the LEGO Group eschewed a license with Concannon in favor of meeting production deadlines. Opp. at 8.; Defs. Resp. ¶ 21.

[6] Fair use is an affirmative defense, and Concannon's has failed to establish a *prima facie* case for his copyright infringement claims as Concannon has not proved copying or substantial similarity, without the need to

purposes in mind; (2) the Subject Torso Element does not contain four of the nine adornments on the Porowski Jacket, and the remaining decorations consist of the LEGO Group's intellectual property and/or elements in the public domain; and (3) the LEGO Group's use of the Subject Torso Element was commercial and served a different purpose than the Porowski Jacket. These facts, along with a visual comparison of the works, prove the LEGO Group's limited use is fair.

***Factor One | Purpose and Character of the Use.*** The Subject Torso Element, a construction toy element, is transformative, as it does not and cannot supplant the Porowski Jacket, a decorated men's leather jacket. *Hachette Book Grp., Inc. v. Internet Archive*, 115 F.4th 163, 179–80 (2d Cir. 2024). The Opposition misconstrues the law regarding transformative fair use. The LEGO Group does not need to provide "criticism, commentary or information" on the Porowski Jacket to establish a transformative purpose. Opp. at 14. The LEGO Group has provided two "compelling justifications" for its transformative use, supported by admissible evidence: (1) capturing Porowski's likeness as he appeared on *Queer Eye*, and (2) highlighting the collaboration between the LEGO Group and *Queer Eye* on the Set. Mem. at 15; *Andy Warhol Found. for the Visual Arts v. Goldsmith*, 598 U.S. 508, 547 n.21 (2023). Both purposes "add[] something new, with a further purpose [and] different character, altering the [Porowski Jacket] with new expression, meaning or message." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994); *Kelley v. Morning Bee, Inc.*, No. 1:21-CV-08420, 2023 WL 6276690, at *12 (S.D.N.Y. Sept. 26, 2023)

Moreover, the Subject Torso Element serves "a new and different function from the original work and is not a substitute for it." *Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87, 96 (2d Cir. 2014). The adornments on the Subject Torso Element highlight the collaboration between the

---

address the LEGO Group's affirmative defense of fair use. Concannon has, at most, proved access, which the LEGO Group does not dispute.

LEGO Group and *Queer Eye* (a transformative purpose), namely, the LEGO Group's "Rebuild the World"™ slogan and the skull Minifigure figurine head. This is beyond "re-present[ing] the protected aspects of the original work…in[] an altered form" that marks a substitute for the original. *Authors Guild v. Google*, *Inc.*, 804 F.3d 202, 225 (2d Cir. 2015).

Finally, the Opposition cites no evidence the LEGO Group sought to exploit the artistic value of the Porowski Jacket in the Set or its marketing for the Set. *Id.* ¶ 30. Indeed, there is none. The record shows the LEGO Group chose the "iconic" Porowski Jacket to accurately capture Porowski's image and likeness, not for the adornments thereon. Defs. Resp. ¶¶ 15, 31.

***Factor Two | Nature of the Copyrighted Work.*** The fact that the Set and the Subject Torso Element are commercial does not weigh against fair use because the LEGO Group's use was both transformative and *factual*. Unwilling to acknowledge authority that "the second factor may be of limited usefulness" where, as here, "the creative work of art is being used for a transformative purpose," *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 612 (2d Cir. 2006) (citing *Campbell*, 510 U.S. at 586), Concannon conflates the second prong of the first fair use factor (the commercial nature of *the secondary use*), with the *nature* of the copyrighted work (*i.e.*, the Porowski Jacket). *E.g.*, *Hachette Book Grp.*, 115 F.4th at 179 ("In assessing the first factor, courts consider two sub-factors: (i) the extent to which the secondary use is transformative and (ii) whether *the secondary use is commercial* in nature.").

***Factor Three | Amount and Substantiality of the Use.*** Concannon has not demonstrated the LEGO Group used more than necessary of the Porowski Jacket to achieve its transformative purposes of capturing Porowski's likeness on the show and highlighting the collaboration between the LEGO Group and *Queer Eye*. Any similarity, including overall placement, aesthetic, and color scheme (Opp. at 22) to the adornments covered by the '952 Copyright is necessary to achieve these

transformative purposes.[7] Moreover, it is undisputed that the LEGO Group did not use the entirety of the Porowski Jacket. Indeed, as Concannon admits, the LEGO Group changed every adornment on the Porowski Jacket—the core of Concannon's creative expression—in its creation of the Subject Torso Element to highlight the collaboration between the LEGO Group and *Queer Eye*.[8] Pl. SOF ¶¶ 22–24. *See, e.g.*, *Blanch v. Koons*, 467 F.3d 244, 257 (2d Cir. 2006) (finding that Koons's use of the entirety of the underlying work was justified in light of the stated purpose of "convey[ing] the 'fact' of the photograph to viewers of the painting"); *Hachette Book Grp.*, 115 F.4th at 188 ("Sometimes it is necessary to copy the entirety of a work in order to achieve a legitimate, transformative secondary purpose."). In Concannon's words, the LEGO Group ▓▓▓▓▓▓▓▓▓▓▓ Defs. SOF ¶ 50.

***Factor Four / Effect on the Market.*** No reasonable jury could find the LEGO Group's use of the Subject Torso Element affected Concanon's market for the Porowski Jacket. The fourth fair use factor "focuses on whether the copy brings to the marketplace a competing substitute for the original, or its derivative, so as to deprive the rightsholder of significant revenues because of the likelihood that potential purchasers may opt to acquire the copy in preference to the original." *Google*, 804 F.3d at 223; *see also Bill Graham Archives*, 448 F.3d at 614 (looking at the impact of traditional, not transformative, license markets). Concannon has presented no evidence there *is* a market for the Porowski Jacket—a one-of-one piece owned by Porowski.[9] Concannon admits

---

[7] Concannon's fair use argument is, at bottom, that the "placement" of the decorations on the Subject Torso Element and overall "color scheme" and "aesthetic" are similar to the Porowski Jacket. The '952 Copyright does not cover the physical jacket (*e.g.,* zipper placement or the black color). Any similarities between the Subject Torso Element and *the jacket* are irrelevant to Concannon's copyright claims or the LEGO Group's fair use defense.

[8] Concannon attempts to create a triable issue by arguing the LEGO Group's ownership of its intellectual property (*i.e.*, the Minifigure figurine skull on the front of the Subject Torso Element, and "Rebuild the World"™ slogan on the back) is irrelevant because the Subject Torso Element is "a derivative work of the Concannon Jacket." Pl.'s SOF ¶ 25. The LEGO Group's intellectual property, which predates the Porowski Jacket, is not derivative of Concannon's work. Moreover, these two elements show the LEGO Group and *Queer Eye* collaboration.

[9] There is no evidence that Concannon's ability to license any work has been affected.

the Subject Torso Element is *not* a substitute for a wearable article of clothing, and "the jacket was a one-off piece [that] was not a piece Plaintiff would create again for sale like a t-shirt" (his traditional licensing market). ECF 116-14 at 41; Pl. AF ¶ 7. His lost licensing revenue argument is inapt *ipse dixit* and lacks evidence.

### III.     Concannon's Trade Dress Claims Fail as a Matter of Law.

The Opposition fails to adduce evidence to support a finding that the asserted trade dress has acquired secondary meaning, or a likelihood of confusion. *Sherwood 48 Assocs. v. Sony Corp. of Am.*, 76 F. App'x 389, 391 (2d Cir. 2003). As a result, Count IV fails as a matter of law.

***Secondary Meaning.*** There is no evidence in the record that the "*primary significance*" of the asserted trade dress "is to identify the source of the product" (*i.e.*, Concannon) "rather than the *product itself.*" *Inwood Lab'ys, Inc. v. Ives Lab'ys, Inc.*, 456 U.S. 844, 851 n.11 (1982) (emphasis added); *e.g.*, *RiseandShine Corp. v. PepsiCo, Inc.*, No. 23-1176-CV, 2024 WL 5165388, at *3 (2d Cir. Dec. 19, 2024). The Opposition fails to meaningfully respond to the cases cited in the Memorandum requiring such evidence (Mem. at 27–28) because Concannon has no such evidence.

No reasonable jury could find consumers associated Concannon as the *source* of articles of clothing featuring "(1) short, provocative phrases; (2) satirical commentary on punk rock and mainstream pop culture; [and] (3) hand-painted graffiti-style lettering." ECF No. 66 at 29.

Concannon concedes there is no evidence that he spent money advertising his products and there is no consumer survey showing consumers associate Concannon as the source of his products. Opp. at 32. These factors are not "neutral" (Opp. at 32); they weigh in favor of the LEGO Group. *RiseandShine*, 2024 WL 5165388, at *3 ("[Lack] of survey evidence is probative, especially . . . [after] discovery when evidence of acquired distinctiveness is hardly overwhelming.").

The remaining secondary meaning factors also favor the LEGO Group. First, Concannon's argument that plagiarism attempts do not have to "explicitly reference Concannon" or associate products with his name and goodwill is in direct contravention of the law. *E.g.*, *Capri Sun GmbH v. Am. Beverage Corp.*, 595 F. Supp. 3d 83, 157 (S.D.N.Y. 2022) ("[T]he key question is whether the copying was done deliberately, so as to benefit from [the plaintiff's] name and good will.") (quotation marks omitted).[10] Only *one* of the cited plagiarism attempts references Concannon. Defs. Resp. ¶¶ 45–46. No reasonable jury could find these attempts were to capitalize on Concannon's name or goodwill. Second, the "media coverage" Concannon cites fails to show a connection between *Concannon* and *the asserted trade dress*.[11] The articles Concannon relies on only discuss him or his art generally, which is insufficient to support secondary meaning for the asserted trade dress. *E.g.*, *LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*, 209 F. Supp. 3d 612, 659 (S.D.N.Y. 2016) ), *aff'd*, 720 F. App'x 24 (2d Cir. 2017); *Capri Sun GmbH*, 595 F. Supp. 3d at 155. Third, Concannon failed to produce evidence of exclusivity of the asserted trade dress. He concedes there are other graffiti writers (Pl. SOF ¶ 53) and has not shown exclusivity of "short, provocative phrases" providing "satirical commentary on punk rock and mainstream pop culture." Finally, there is no authority that sales of ███████ over a 4.5-year period are "high volume." *See* Mem. at 30–31 (collecting cases); Defs. Resp. ¶ 47. No reasonable trier of fact could find the asserted trade dress has a secondary meaning—that it identifies Concannon as the source of the products.

***Likelihood of Confusion.*** There is no evidence of actual confusion. *Savin Corp. v. Savin Grp.*, 391 F.3d 439, 459 (2d. Cir. 2004) ("There can be no more positive or substantial proof of

---

[10] *See also Laureyssens v. Idea Grp., Inc.*, 964 F.2d 131, 136 (2d Cir. 1992) ("[E]vidence that the trade dress or product design was intentionally copied by a competitor can support an inference of secondary meaning if the circumstances indicate *an intent to benefit from the good will of the prior user* through confusion.") (quotation marks

the likelihood of confusion.") (quotation marks omitted). Concannon failed to present a consumer survey. Indeed, after more than a year of discovery, there is no evidence consumers believed the Set *was created by or affiliated with Concannon.* Mem. at 37; Defs. Resp. ¶ 54. With respect to the remaining *Polaroid* factors, the Opposition fails to adduce *any evidence* of proximity between the products, that Concannon or the LEGO Group seeks to bridge the gap between the distinct products, or that the Subject Torso Element and the Porowski Jacket compete in the market. ECF No. 66 at 40. Instead, the Opposition *argues* that the products are proximal, the goods compete, and customers overlap[12] because consumers of both products are fans of *Queer Eye* who are interested in purchasing products related to the show (*e.g.*, the Set and Concannon shirts worn on the show[13]). The Opposition identifies no evidence to support this argument.[14]

## IV.     Concannon's CUTPA Claim Fails as Matter of Law.

Concannon's CUTPA claim fails because it is derivative of his Lanham Act claim. Mem. at 38–39 To the extent Concannon alleges a CUTPA claim for conspiracy, this claim fails as a matter of law because Concannon has alleged an intra-corporate conspiracy. *See Harp v. King*, 835 A.2d 953, 971 (Conn. 2003).

---

omitted); *Jewish Sephardic Yellow Pages, Ltd. v. DAG Media, Inc.*, 478 F. Supp. 2d 340, 375 (E.D.N.Y. 2007) (collecting cases).
    [11] The Court did not previously "find" the social media posts Concannon references in the Third Amended Complaint constitute unsolicited media coverage that support a finding of secondary meaning. Instead, the Court noted, at the Rule 12(b)(6) stage, that Concannon *alleged* "unsolicited media attention via photographs of celebrities 'wearing and promoting' Concannon products." ECF No 66 at 34. For the reasons outlined in the Memorandum, Concannon's evidence is insufficient. Mem. at 32–33.
    [12] Concannon does not separately argue that either party seeks to bridge the gap between the products (*i.e.*, launch new products), and instead conflates this prong with proximity in the market. As discussed in the Memorandum, there is no evidence of bridging the gap. Mem. at 36.
    [13] The Opposition fails to cite admissible evidence supporting any proximity, competition, or market overlap between the Set on the one hand and Concannon Products that were not featured on *Queer Eye* but purportedly bear the asserted trade dress on the other hand.
    [14] Further, there is no evidence of bad faith as discussed *supra*. There is no evidence the LEGO Group sought to capitalize on the asserted trade dress or elements of the Porowski Jacket.

-11-

        Respectfully submitted,

By:  */s/ Andraya P. Brunau*
      Elizabeth A. Alquist (ct15643)
      Andraya Pulaski Brunau (ct29715)
      Caitlin M. Barrett (ct31379)
      Day Pitney LLP
      Goodwin Square
      225 Asylum Street
      Hartford, CT 06103-1212
      Telephone: (860) 275-0137
      Facsimile:  (860) 881-2456
      *eaalquist@daypitney.com*
      *abrunau@daypitney.com*
      *cbarrett@daypitney.com*

      *Attorneys for Defendants LEGO Systems,
      Inc. and LEGO System A/S*

-12-

## **CERTIFICATION**

I hereby certify that on February 28, 2025, a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                                            */s/ Andraya P. Brunau*
                                                            Andraya Pulaski Brunau (ct29715)