## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| JAMES CONCANNON, | Civil Action No. 3:21-CV-1678 (OAW) |
| Plaintiff, | |
| v. | |
| LEGO Systems, Inc. and LEGO System A/S, | |
| Defendants. | February 28, 2025 |

### *REDACTED* DEFENDANTS LEGO SYSTEMS, INC. AND LEGO SYSTEM A/S' RESPONSE TO PLAINTIFF'S LOCAL RULES 56(a)(2) STATEMENT OF ADDITIONAL MATERIAL FACTS

Defendants LEGO Systems, Inc. and LEGO System A/S (the "LEGO Group") submit the following response to Plaintiff James Concannon's ("Concannon") Local Rule 56(a)(2) Statement of Additional Material Facts (ECF No. 133).

### INTRODUCTORY STATEMENT[1]

None of the 57 Paragraphs of "additional facts" in Concannon's 56(a)(2) Statement establish genuine issues of material fact that preclude the entry of summary judgment in the LEGO Group's favor. D. Conn. L. Civ. R. 56(a)(2)(ii) (requiring submission of "additional facts" that "establish genuine issues of material fact precluding judgment in favor of the moving party" supported admissible evidence). Concannon's "additional facts" are immaterial to the LEGO Group's Motion for Summary Judgment (ECF No. 114) and fail to comply with Local Civil Rules 56(a)(1), 56(a)(2) and 56(a)(3). Notably, Concannon's statements lack evidentiary support, and rely on, *inter alia*, inadmissible hearsay, legal argument, and mischaracterizations. Concannon's

---

[1] The LEGO Group incorporates by reference into each of its responses below the objections set forth in this Introductory Statement, and a general objection that Concannon's 56(a)(2) Statement fails to comply with Fed. R. Civ. P. 56(c)(1) and D. Conn. L. Civ. R. 56(a).

56(a)(2) Statement cites inadmissible pleadings, including the Third Amended Complaint (ECF No. 48) and the Court's ruling on the LEGO Group's Motion to Dismiss (ECF No. 66). *Martin v. Town of Simsbury*, 505 F. Supp. 3d 116, 125 (D. Conn. 2020).

### DEFENDANTS' RESPONSE TO PLAINTIFF'S LOCAL RULE 56(a)(2) STATEMENT OF ADDITIONAL MATERIAL FACTS

1.  Plaintiff's trade dress for his line of clothing and accessories includes three distinct elements both in ready-made and custom pieces: "(1) short, provocative phrases; (2) satirical commentary on punk rock and mainstream pop culture; and (3) hand-painted graffiti-style lettering" ("Trade Dress"). ECF No. 66 at 29; Pl.'s Ex. 5 (Pl. Dep.) 168:15-169:3.

**Response:** Objection; ¶ 1 relies on inadmissible evidence (*i.e.*, *allegations* in the Third Amended Complaint and deposition testimony referring to these *allegations*) and the cited evidence does not demonstrate Concannon's products contain the three elements he alleges comprise his trade dress. Subject to objections, admitted only that the Court previously instructed that, for purposes of surviving a 12(b)(6) motion, Concannon's asserted trade dress is *defined* as stated above. Denied Concannon has proven his product line features the asserted trade dress.

2.  Porowski is a fan of Plaintiff and wore several pieces from Plaintiff's line of clothing and accessories bearing the Trade Dress ("Concannon Products") on *Queer Eye*. ECF No. 48 (3d Am. Compl.) ¶ 39; Pl.'s Ex. 5 (Pl. Dep.) 137:10-12; Pl.'s Ex. 8 (Pl.'s Am. Resps. to Defs.' 1st Set of Interrogs.) at 9-17, Nos. 7, 8, & 9.

**Response:** Objection; ¶ 2 is immaterial. Subject to objections, admitted only that Porowski wore clothing on *Queer Eye* the LEGO Group now knows to have been sold by Concannon. Brunau Decl. Ex. 3 (Ashton Dep.) at 15:9-24.

3.  In addition to ready-to-wear Concannon Products, Plaintiff gave Porowski and Porowski wore many custom Concannon Products from 2017–2021. ECF No. 48 at ¶ 40; Pl.'s Ex.

5 (Pl. Dep.) 223:13-225:8; Pl.'s Ex. 8 at 12-15, No. 8.

**Response:** Objection; ¶ 3 is immaterial and relies on inadmissible allegations. Subject to objections, admitted only that Porowski wore clothing made by Concannon between 2017–2021.

4.     Further, Porowski would credit Concannon Products, tagging Concannon in social media posts and discussing him in interviews. ECF No. 48 at ¶ 29 (showing 66,563 Instagram "likes"); Pl.'s Ex. 5 (Pl. Dep.) at 224:15-24, 251:23-252:5; Pl.'s Ex. 8 at 9-12, No. 7; *see also, e.g.*, Pl.'s Ex. 10 (CONCANNON04919); Pl.'s Ex. 11 (CONCANNON02765-2767).

**Response:** Objection; ¶ 4 is immaterial and relies on inadmissible hearsay. Subject to objections, admitted only that the cited documents show Porowski tagged Concannon in *one* social media post, and cited Concannon as the maker of the James Dean Speed Queen shirt.

5.     Porowski asked Plaintiff to design the Concannon Jacket as a custom piece with elements distinctive to Plaintiff's signature style. ECF No. 48 at ¶ 41; Pl.'s Ex. 5 (Pl. Dep.) 231:12-232:9; Pl.'s Ex. 12 (CONCANNON03595-3806) at CONCANNON03618, CONCANNON03626, CONCANNON03632-3635, CONCANNON03674-3678; Pl.'s Ex. 9 (CONCANNON03438-3501) at CONCANNON03443.

**Response:** Objection; ¶ 5 relies on inadmissible hearsay, is misleading, without context, and argumentative. The cited documents do not support that Porowski asked Concannon to create a custom piece with "elements distinctive to Plaintiff's style." Subject to objections, admitted only that Porowski asked Concannon to decorate his leather jacket, and collaborated with him on the decorations. Pl. Ex. 12 at (CONCANNON0003565); Brunau Decl., Ex. 14 (Pl. Dep. ) at 139:7-14.

6.     Plaintiff designed the Concannon Jacket as a gift for Porowski, not specifically for Porowski to wear on Queer Eye. See Pl.'s Ex. 5 (Pl. Dep.) at 235:1-9.

**Response:** Admitted that Concannon designed the Porowski Jacket as a gift for Porowski.

Denied that Concannon did not specifically design the Porowski Jacket for *Queer Eye*. Concannon knew Porowski intended to wear the jacket on *Queer Eye*, having confirmed Porowski started shooting *Queer Eye* in July 2018 (Brunau Decl., Ex. 14 (Pl. Dep.) at 233:21–234:15; Pl. Ex. 12 at CONCANNON03634-35)) and asking Porowski if ███████████████████████ ██████████████████████████████ (Brunau Decl., Ex. 18 at CONCANNON03670).

7.    Plaintiff did not intend for Porowski's use of the Concannon Jacket to boost Plaintiff's sales, as the jacket was a one-off piece; it was not a piece Plaintiff would create again for sale like a T-shirt. *Id.* at 248:24-249:22.

**Response:** Admitted only that Concannon testified he did not intend to re-create and sell copies of the Porowski Jacket; the remainder of ¶ 7 is not supported by the citations.

8.    When Plaintiff gifted Porowski the Concannon Jacket, Plaintiff did not tell Porowski that he could license the jacket or that he could use it for any purpose whatsoever. *Id.* at 161:7-16. Plaintiff expected Porowski to wear the Concannon Jacket as any other piece of clothing in his closet, not license it to a third-party. *Id.* at 53:20-24.

**Response:** Objection; ¶ 8 is immaterial because only Concannon's objective conduct (not his subjective *uncommunicated* beliefs or expectations) are relevant to the LEGO Group's implied license defense, and the cited testimony does not support the second sentence. *Jose Luis Pelaez, Inc. v. McGraw-Hill Global Educ. Holdings, LLC*, 399 F. Supp. 3d 120, 141–42 (S.D.N.Y. 2019). Paragraph 8 is denied. Concannon admits he conveyed the Porowski Jacket to Porowski with "no strings attached" (ECF No. 131 at 11) with knowledge he would wear it on *Queer Eye* (Brunau Decl., Ex. 14 (Pl. Dep.) at 233:21–234:8; 235:1-13), unlike "any other piece of clothing."

9.    Every time a Concannon Product was featured on *Queer Eye*, ITV America would notify Plaintiff, obtain his permission, and have him execute narrow release granting ITV America

(on behalf of Netflix) the limited right to feature Concannon Products on the show and in connection with the show's advertising. ECF No. 48 at ¶¶ 38-40; Pl.'s Ex. 5 (Pl. Dep.) 136:10-20; Pl.'s Ex. 8 at 15-17, No. 9.

**Response:** Objection; ¶ 9 is immaterial, argumentative and states a legal conclusion regarding the terms of documents that speak for themselves. Subject to objections, admitted only that Concannon executed releases in favor of ITV America for several t-shirts purchased by the production company that appeared on *Queer Eye*. Pl. Ex. 13 at CONCANNON01121, CONCANNON01512, CONCANNON01819–20, CONCANNON02322.

10.    Thus, through their previous business interactions, Plaintiff expected that *Queer Eye* would contact him when Porowski wore a Concannon Product on the show. *Id.* at 17, No. 9; Pl.'s Ex. 5 (Pl. Dep.) at 136:8-20; Pl.'s Ex. 13 (CONCANNON01118-1120, CONCANNON01121,CONCANNON01168-1172, CONCANNON01503-1511, CONCANNON01512, CONCANNON01819-1820, CONCANNON02317, CONCANNON02318-2319, CONCANNON02320-2321, CONCANNON02322).

**Response:** The LEGO Group incorporates its objections/response to ¶ 8.

11.    *Queer Eye* did not seek Plaintiff's permission to feature the Concannon Jacket on the show. ECF No. 48 at ¶ 40; Pl.'s Ex. 5 (Pl. Dep.) 245:15-246:12; Pl.'s Ex. 8 at 15-17, No. 9.

**Response:** Objection; ¶ 11 is immaterial. Concannon also did not take any action after the Porowski Jacket appeared on *Queer Eye*. Pl. Ex. 5 (Pl. Dep.) at 247:19–248:19.

12.    Due to Concannon and *Queer Eye*'s extensive history, Concannon believed that this was an oversight by ITV America, and was happy that Porowski continued to credit him for the Concannon Jacket. ECF No. 48 at ¶ 43; Pl.'s Ex. 5 (Pl. Dep.) at 247:8-248:7; 253:12-18.

13.    **Response:** The LEGO Group incorporates its objections/response to ¶ 8. The

statement that Concannon "was happy that Porowski continued to credit him for the Concannon Jacket" is not supported by the cited documents. Plaintiff did not grant *Queer Eye* any license to replicate his work in collaboration with third parties. *See id.*; ECF No. 48 at ¶¶ 38-40; Pl.'s Ex. 5 (Pl. Dep.) at 53:20-24; Pl.'s Ex. 8 at 15-17, No. 9.

**Response:** Objection; ¶ 13 is immaterial to the LEGO Group's implied license defense. Subject to objections, admitted only Concannon did not execute a license with *Queer Eye* producers, Scout Productions, Inc. ("Scout") or ITV America ("ITV"), for the Porowski Jacket.

14.    The Infringing Product copies the unique combination, positioning, and arrangement of the protectable elements of the Concannon Jacket, specifically: (1) the yin-yang symbol with a smiling expression drawn inside of it on the left collar; (2) the peace sign on the right collar; (3) the skull on the left breast; (4) the safety pin detailing on the right breast; (5) the circular chain link pattern below the right breast; and (6) the graffiti-style lettering of a play on words on the back of the jacket ("Thyme Is On My Side" in the Concannon Jacket, and "Rebuild the World" in the Infringing Product), including the dripping paint on the letters T, O, D, and E. *See* ECF No. 48 at ¶¶ 48-51; Pl.'s Ex. 5 (Pl. Dep.) 35:13-36:21, 39:2-12, 237:4-13; Pl.'s Ex. 6 (Ashton Dep. Vol. I) at 71:20-72:13, 74:23-81:17, 82:16-83:8; Pl.'s Ex. 8 at 20-24, Nos. 12 & 13.

**Response:** Objection; ¶ 14 is argumentative and misleading. Subject to objections, denied. Ashton testified the LEGO Group, in addition to changing various elements, had to "make choices where to move" elements in creating the Subject Torso Element due to the difference in shape between the trapezoidal Minifigure figurine torso and a human torso. Brunau Decl., Ex. 3 (Ashton Dep.) at 82:16–83:3. He also testified that the LEGO Group did not use a "chain link" pattern, but a border meant to look like "s[t]itching." Pl. Ex. 6 (Ashton Dep.) at 75:22–76:10.

15.    In designing the Infringing Product, Defendants tried to recreate the placement of

the Concannon Jacket's elements on the product. *See* Pl.'s Ex. 6 (Ashton Dep. Vol. I) at 83:4-8.

**Response:** The LEGO Group incorporates its objections/response to ¶ 14. Subject to objections, admitted only that the LEGO Group kept the modified adornments featured on the Subject Torso Element in "roughly" the same place as the Porowski Jacket so the Subject Torso Element would be recognizable as something Porowski would wear on *Queer Eye*. Brunau Decl., Ex. 3 (Ashton Dep.) at 82:3–83:8.

16.    Defendants intended "Rebuild the World" on the back of the Infringing Product to be "a call to our fans and consumers to get creative" using LEGO products. *Id.* at 84:23-85:4.

**Response:** Objection; ¶ 16 is misleading; Ashton testified the LEGO Group's ongoing "Rebuild the World"™ campaign is a "call to get LEGO consumers getting creative," separate from its use in the Set. Brunau Decl., Ex. 3 (Ashton Dep.) at 83:21-25.

17.    While designing the Infringing Product, Defendants ██████████████████ ████████████████████████████████████████████████████████ ██████  *See* Pl.'s Ex. 3 at LEGOGROUP0000055.

**Response:** Objection; ¶ 17 is argumentative and misleading. Ashton testified ████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████. Declaration of Andraya Brunau dated 02/28/2025 ("Brunau Decl. II", Ex. 1 (Ashton Dep. Supp.) at 89:14–90:9.) The LEGO Group's reference ██████ ████████████████████████████████████████████████████████ ██████████████████████████ in creating the Subject Torso Element. Pl. Ex. 3 at LEGOGROUP0000055.

18.    While designing the Infringing Product, Defendants ████████████████

████████████████████████████████ Pl.'s Ex. 6 (Ashton Vol. I) at 111:19-23.

**Response:** Objection; ¶ 18 is immaterial, misleading and not supported by cited testimony. Subject to objections, denied. Ashton testified the LEGO Group knew and had an understanding that its license agreement with Scout covered the *Queer Eye* Artists' likenesses, including wardrobe. Brunau Decl., Ex. 3 (Ashton Dep.) at 111:8-23.

19.     While designing the Infringing Product, ███████████████████████

████████████████████████████████████████████████████████████

██████████████ *See id.* at 111:8-11, 116:22-25.

**Response:** The LEGO Group incorporates its objections to ¶ 18. Subject to objections, admitted only that the LEGO Group did not need to investigate who designed the Porowski Jacket because it had a license to the Artists' likeness, including wardrobe, and the Subject Torso Element was approved by the licensor, Scout Productions. Brunau Decl. Ex 3. (Ashton Dep.) at 111:8–23; Brunau Decl. II, Ex. 1 (Ashton Dep. Supp.) at 116:22–117:6.

20.     While designing the Infringing Product, Defendants were ████████████████

"██████████████████" ████████████████████████████ Ex. 2 at LEGOGROUP0002478; Pl.'s Ex. 3 at LEGOGROUP0000055.

**Response:** Objection; ¶ 20 is misleading and takes the quoted statement out of context. Subject to objections, denied. Ashton testified the LEGO Group was unaware of any licensing issues surrounding the Porowski Jacket but sought specific approval from the licensor Scout because the LEGO Group does not often deal with slogans on clothing. Pl. Ex. 6 (Ashton Dep.) at 112:6–113:20; Brunau Decl. II, Ex. 1 (Ashton Dep. Supp.) at 116:13-21.

21.     While designing the Infringing Product, Defendants internally discussed ████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████" Pl.'s Ex. 2 at

LEGOGROUP0002477-2478, LEGOGROUP0002482.

**Response:** Objection; ¶ 21 is not supported by the cited documents, and the LEGO Group

incorporates its objections/responses to ¶¶ 19-20. The cited documents do not discuss ████████

████████████████████████████████████████; they show only ████████

████████████████████████████████████. Pl. Ex. 6 (Ashton

Dep.) at 112:6–113:20; Brunau Decl. II, Ex. 1 (Ashton Dep. Supp.) at 116:13-21.

22.    IMG and Scout acknowledged these "████████████" and that Defendants ████████

████████████████████████████████████████████ Pl.'s Ex. 15

(SCOUT_ 044064-44070) at SCOUT_044064 ("████████████████████████████

████████████████████████████████████████████

████████████████████████").

**Response:** Objection; ¶ 22 is immaterial, relies on inadmissible hearsay, and is misleading.

Subject to objections, ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████. Pl. Ex. 15 at SCOUT_044064.

23.    IMG and Scout have also acknowledged that ████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████ *See* Pl.'s Ex. 15 at SCOUT_044064; Pl.'s Ex. 16

(SCOUT_027625-27628) at SCOUT_027625.

**Response:** The LEGO Group incorporates its objections to ¶ 22, and objects to

Concannon's reliance on communications between Scout and IMG regarding *this litigation* as immaterial to the LEGO Group's Motion. Subject to objections, the LEGO Group admits only that (a) a representative of Scout stated ███████████████████████████████" though Scout still approved the Subject Torso Element (Brunau Decl. Ex. 9 at LEGOGROUP00006658-65); and (b) Scout and IMG stated ████████████████████████████████████ ████████████████████.

24.    Defendants acknowledge that the Concannon Jacket is a removable clothing article. Pl.'s Ex. 6 (Ashton Dep. Vol. I) 132:9-15.

**Response**: Objection; ¶ 24 is immaterial. Subject to objection, admitted.

25.    Defendants acknowledge that Porowski has worn other articles of clothing on *Queer Eye* besides the Concannon Jacket. *See id.* at 132:9-12.

**Response:** Objection; ¶ 25 is immaterial. Subject to  objection, admitted.

26.    Porowski has publicly credited Concannon as the designer of the Concannon Jacket and associated the Infringing Product with Concannon and the Concannon Jacket. *See, e.g.*, Pl.'s Ex. 17 (LEGOGROUP0005541-5544) at LEGOGROUP0005541 ("Porowski said on a particular James Concannon piece [the Concannon Jacket]: 'This jacket. The brilliant James Concannon handpainted this moto jacket – it's been on Queer Eye, it's been to Congress, and it's even on a Lego. I am forever in awe of James's art and you can also find some of his painted tees in my closet.").

**Response:** Objection; ¶ 26 is immaterial and relies on inadmissible hearsay.

27.    While Concannon expected that Porowski would be seen wearing the Concannon Jacket, he never expected that Defendants would exploit his designs for their own profit in the Set. ECF No. 48 at ¶ 44. Indeed, it was impossible for Mr. Porowski to have known given that the

Concannon Jacket was created in 2018, and he had no knowledge of the Infringing Work until Defendants began advertising the Set in September 2021. *See* ECF No. 121-8 at CONCANNON03633; Pl.'s Ex. 5 (Pl. Dep.) 42:1-25.

**Response:** Objection; ¶ 27 is immaterial, misleading, and confusing (second sentence appears to mistake Porowski for Concannon), and argumentative. The LEGO Group incorporates its objections to ¶ 8. Denied.

28.    Plaintiff was not aware of Queer Eye's collaboration with Defendants on the Set and the Infringing Product until he first saw the Set and Infringing Product advertised in September 2021. ECF No. 48 at ¶ 43; Pl.'s Ex. 5 (Pl. Dep.) at 42:12-20, 47:13-22, 54:10-55:2.

**Response:** Objection; ¶ 28 is immaterial. Subject to objection, admitted.

29.    Before the Set was released, Porowski never communicated to Plaintiff that the Concannon Jacket would be used in conjunction with the Set. *Id.* at 54:10-55:2, 130:1-17.

**Response:** Objection; ¶ 29 is immaterial. Subject to objection, admitted.

30.    Defendants highlighted the Infringing Product in advertising materials for the Set to help promote sales of the Set. *See* ECF No. 48 at ¶ 54 (citing https://www.youtube.com/watch?v=RDGxA14iA7c at 4:28); *id.* ¶ 59 (citing video available at https://www.instagram.com/queereye/p/CTz0Vq-FkSb/); *id.* ¶ 56; Pl.'s Ex. 1 (Ashton Dep. Vol. II) at 155:6-156:5; 189:9-190:25, 196:8-14; Pl.'s Ex. 7 (showing the Infringing Product on both sides of Set packaging).

**Response:** Objection; ¶ 30 is misleading, argumentative, and not supported by the record. The cited documents do not support that the LEGO Group "highlighted" the Subject Torso Element on the Set packaging to "help promote sales." Ashton testified the LEGO Group included the Subject Torso Element on Set packaging pursuant to legal requirements that packaging depict

the Set's contents (Brunau Decl., Ex. 3 (Ashton Dep.) at 156:6-12; Pl. Ex. 1 (Ashton Dep.) at 176:21–177:3), and the animated video recreates the *Queer Eye* intro video using the LEGO Minifigure figurines of the *Queer Eye* Artists (Defs. SOF ¶ 64). Subject to objections, admitted only that the Subject Torso Element is on the Set packaging and marketing materials.

31.     Defendants chose to copy the Concannon Jacket in creating the Infringing Product because they believe the jacket is "iconic." ECF No. 48 at ¶ 54 (citing https://www.youtube.com/watch?v=RDGxA14iA7c at 4:28 ("Antoni has a really iconic leather jacket that we redid in LEGO version.")); Pl.'s Ex. 1 (Ashton Dep. Vol. II) at 197:11-198:1; Pl.'s Ex. 6 (Ashton Dep. Vol. I) at 44:3-14, 59:13-16; Pl.'s Ex. 2 at LEGOGROUP0002481 ("██████ ████████████████████████████████████████████████████ ███████████████████████").

**Response:** Objection; ¶ 31 is argumentative, misleading, and not supported by the record. Subject to objection, admitted only that it chose the Porowski Jacket for the Porowski Minifigure figurine because the jacket was recognizable as something Porowski wore frequently on *Queer Eye*. Pl. Ex. 6 (Ashton Dep.) at 44; Brunau Decl., Ex. 3 (Ashton Dep.) at 74.

32.     Nearly all the individual LEGO pieces of the Set are LEGO architectural components, and there are only six LEGO Minifigure figurines in the Set. *See* ECF No. 127 at 36:4-37:4. Five of the LEGO Minifigure figurines in the Set—including the figurine of Porowski—represent the core cast of the *Queer Eye* show (the Fab 5). *Id.* at 37:6-9.

**Response:** Objection; ¶ 32 is vague (it is unclear what is meant by "architectural components") and immaterial. Subject to objections, admitted only that five of the LEGO Minifigure figurines in the Set represent the *Queer Eye* Artists. Denied as to the rest. The Set includes seven Minifigure figurines. The Set also includes many construction toy elements that are

not "architectural components." Brunau Decl., Ex. 7 (Building Instructions)

33.    The focus of the Set is the Fab 5 characters' Minifigure figurines, which include Porowski. Pl.'s Ex. 1 (Ashton Dep. Vol. II) at 158:7-25, 176:21-177:3.

**Response:** Objection; ¶ 33 is immaterial and misleading. Ashton testified the Set "was based on celebrating the whole *Queer Eye* show in totality." Pl. Ex. 1 (Ashton Dep.) at 158:7-25. Subject to objections, the LEGO Group admits only that the Set contained a Porowski Minifigure figurine.

34.    There are multiple torso clothing options for the Minifigure figurine in the Set. Pl.'s Ex. 3 at LEGROGROUP0000044-56; Pl.'s Ex. 6 (Ashton Dep. Vol. I) at 37:18-38:2, 38:20-39:11; Pl.'s Ex. 7.

**Response:** Objection; ¶ 34 is immaterial. Subject to objection, admitted only that the Set included extra clothing for the Porowski, Brown, and Van Ness Minifigure figurines. Brunau Decl., Ex. 7 (Building Instructions);

35.    There are two torso clothing options for Porowski's Minifigure figurine in the Set – the Infringing Product and a torso piece depicting a white T-shirt with a neckerchief. Pl.'s Ex. 3 at LEGROGROUP0000044-56; Pl.'s Ex. 6 (Ashton Dep. Vol. I) 63:15-64:18; Pl.'s Ex. 7; Pl.'s Ex. 19 (LEGOGROUP0004745 & LEGOGROUP04737).

**Response:** Objection; ¶ 35 is immaterial. Subject to objection, admitted.

36.    Plaintiff views the Set as "an encompassing piece, the entire piece is one unit to me, and so I am claiming that this singular box set violates my intellectual property." Pl.'s Ex. 5 (Pl. Dep.) 27:15-21.

**Response:** Objection; ¶ 36 is immaterial, argumentative and contains legal conclusions. The LEGO Group denies the Set "violates" Concannon's asserted intellectual property.

37.     Plaintiff is a multidisciplinary artist who creates art in forms outside of clothing. *Id.* at 10:8-24.

**Response:** Objection; ¶ 37 is immaterial. Subject to its objection, admitted only that Plaintiff is an artist who has sold clothing, pins, and posters, and displayed mixed media art.[2]

38.     Plaintiff has licensed his clothing products to third parties for a percentage of sales. *Id.* at 133:10-136:5; Pl.'s Ex. 8 at 15-17, No. 9.

**Response:** Objection; ¶ 38 is immaterial and  not supported by the third party documents.

39.     Since 2013, Plaintiff's work has always attributed itself to a punk rock ethos. *See* Pl.'s Ex. 5 (Pl. Dep.) at 14:17-22.

**Response:** Objection; ¶ 39 is immaterial; "punk rock ethos" is not a trade dress definition.

40.     A visual inspection of Concannon Products demonstrates Plaintiff's consistent use of the Trade Dress. ECF No. 48 at ¶¶ 19, 26, 27, 29; Pl.'s Ex. 5 (Pl. Dep.) at 178:12-179:3; Pl.'s Ex. 20 (CONCANNON01995-2001, Pl. Dep. Ex. 14); Pl.'s Ex. 21 (CONCANNON02473-2488).

**Response:** Objection; ¶ 40 is a legal conclusion, not supported by the cited documents, and Concannon has not met his burden of proving "Concannon Products." Denied.

41.     Concannon has been making the Concannon Products since 2013. Pl.'s Ex 5 (Pl. Dep.) at 144:5-15.

**Response:** Objection; Concannon has not met burden of proving "Concannon Products."

42.     Plaintiff and the Trade Dress have been covered in numerous interviews, articles, social media posts, and other media outlets. Pl.'s Ex. 8 at 11, No. 7; Pl.'s Ex. 17 at LEGOGROUP0005541; Pl.'s Ex. 22 (CONCANNON00150-00164, CONCANNON00187-201,

---

[2] *See, e.g.*, https://www.youtube.com/watch?v=VSCn1rS5zgs.

CONCANNON00239-00240,        CONCANNON00291-00302,        CONCANNON00888-890,

CONCANNON02651-2686,        CONCANNON02689-2701,        CONCANNON02705-2728,

CONCANNON02752,        CONCANNON02754-2758,        CONCANNON02765-2782,

CONCANNON02794-2801, CONCANNON02941-2957, CONCANNON05662-5690).

**Response:** Objection; ¶ 42 is misleading, unsupported, and immaterial because the cited

documents do not even mention the asserted trade dress, and to prove secondary meaning,

Concannon must adduce evidence consumers associate Concannon as the source of the products

bearing the asserted trade dress. Reply Br. at 8.

43.    Moreover, various celebrities and public figures have been photographed wearing

and promoting Concannon Products, and have also posted pictures of themselves wearing

Concannon Products on Instagram and tagged Plaintiff as the source of the products. ECF No. 48

at ¶¶ 26-27, 29; Pl.'s Ex. 8 at 9-10, 12-15, Nos. 7 & 8; Pl.'s Ex. 23 (CONCANNON00369-370,

CONCANNON0375-378, CONCANNON00391, CONCANNON04638, CONCANNON04699,

CONCANNON04749).

**Response:** Objection; ¶ 43 contains inadmissible hearsay, cites unauthenticated

documents, and is immaterial because, to establish secondary meaning, Concannon must adduce

evidence of *unsolicited* media coverage that identifies Concannon as the source of the products

bearing the asserted trade dress.

44.    The Concannon Products' association with *Queer Eye* spurred the popularity of

those products and the copying of Plaintiff's Trade Dress. Pl.'s Ex. 5 (Pl. Dep.) at 126:16-

128:25.

**Response:** The LEGO Group incorporates its objection/response to ¶ 42. Reply Br. at 9.

45.    Many counterfeit versions of Concannon Products have been marketed for sale or

sold without his permission. *Id.* at 122:14-23; Pl.'s Ex. 8 at 12, No. 7; Pl.'s Ex. 24 (CONCANNON00304-321, CONCANNON02783-2785, & CONCANNON02837-2939).

**Response:** The LEGO Group incorporates its objection/response to ¶¶ 40 and 44.

46.    An offering for sale of a counterfeit version of a Concannon Product includes explicit reference to Concannon as the creator. Pl.'s Ex. 24 at CONCANNON02783-2785.

**Response:** Objection; ¶ 46 is a legal conclusion, relies on unauthenticated documents, and Concannon has not proven "Concannon Products."

47.    From January 1, 2019 to August 11, 2023, Plaintiff's revenue from sales of his clothing and accessories was ███████. ECF No. 116-14 at 282:9-283:2; ECF No. 121-6.

**Response:** Admitted, except to the extent Concannon argues the sales are "high volume."

48.    Concannon Products are popular and highly sought after among consumers and celebrities. Pl.'s Ex. 8 at 9-12, Nos. 7-8.

**Response:** Objection; ¶ 48 is argumentative and Concannon has not proven "Concannon Products." Admitted only some consumers have bought items from Concannon. ECF No. 121-6.

49.    Custom Concannon Products are very valuable and sell for hundreds or thousands of dollars. *See, e.g.*, Pl.'s Ex. 14 (CONCANNON05891, CONCANNON05892, CONCANNON05905, & CONCANNON05893).

**Response:** Objection; ¶ is 49 is immaterial to the LEGO Group's Motion; "very valuable" is argumentative and without support.

50.    Indeed, consumers regularly contact Concannon to request Concannon Products, including custom works, based on his signature aesthetic. Pl.'s Ex. 25 (CONCANNON00815, CONCANNON00825-826,        CONCANNON00996,        CONCANNON01322-1324, CONCANNON01490-1492,        CONCANNON01703,        CONCANNON02009-2010,

CONCANNON02105,        CONCANNON02266,        CONCANNON02256-2259,        &
CONCANNON02262-2265).

**Response:** Objection; ¶ 50 misstates documents which do not use "signature aesthetic."

51.    Concannon has created custom pieces bearing the Trade Dress for many celebrities
and public figures. *See* Pl.'s Ex. 8 at 12-15, No. 8.

**Response:** Objection; ¶ 51 asserts a legal conclusion, and Concannon has not proved which
products fall within the asserted trade dress. Admitted only that Concannon has created custom
pieces for celebrities.

51.    Plaintiff invests significant time and effort in organically promoting the Concannon
Products through his Instagram account, including via posts, stories, and reels. *Id.* at 11, No. 7.

**Response:** Objection; ¶ 52 is immaterial and is not supported by the cited document.
Concannon's response to Interrogatory No. 7 does not identify admissible evidence that
*Concannon* invests time in promoting his products and do not satisfy Concannon's burden of
proving secondary meaning for his trade dress.

52.    When the Set was released, people contacted Plaintiff believing that he was
affiliated with the LEGO Group. Pl.'s Ex. 5 (Pl. Dep.) at 284:8-19.

**Response:** Objection; ¶ 52 misstates testimony and relies on inadmissible hearsay. Denied
that there is evidence that people believed Concannon was affiliated with the LEGO Group.
Brunau Decl. Ex. 35 at CONCANNON05170-71.

53.    Several consumers have identified the Infringing Product as a flagrant copy of the
Concannon Jacket. Pl.'s Ex. 26 (CONCANNON02393 ("Your jacket design appears to have
inspired the LEGO piece, no question there."), CONCANNON02397-2399 ("Blatant ripoff of your
design"), CONCANNON03067 ("@lego this is a blatant rip off! It's in the detail! It's so f***ing

obvious!! The rich get rich through plagiarism!!), & CONCANNON05616-564 ("Antoni also gets his favorite leather jacket. The front has a LEGO-ized version of the skull from the original, as well as other similar buttons and patches. But the back is the best part. There you'll find 'Thyme is on my side' is replaced with 'Rebuild the World.'")).

**Response:** Objection; ¶ 54 is argumentative, a legal conclusion, and inadmissible hearsay. The LEGO Group denies the Subject Torso Element is a "flagrant copy."

54.     Both *Queer Eye* and Porowski commissioned Concannon Products to appear on *Queer Eye* pursuant to a release. Pl.'s Ex. 5 (Pl. Dep.) at 137:1-139:19, 223:13-225:5.

**Response:** Objection; cited documents do not support statement. Denied. Porowski did not commission the Porowski Jacket "pursuant to a release." *See* Def. Resp. to ¶ 8 (*supra*).

55.     Defendants marketed the Infringing Product to ████████████████████ ████████████████████████████████████████████████ ████████████████████████ Pl.'s Ex. 1 (Ashton Dep. Vol. II) at 159:5-15, 163:2-165:6, 165:25-169:5, 171:2-172:9; Pl.'s Ex. 27 (Martin Dep.) at 52:10-53:16, 54:9-18; Pl.'s Ex. 28 (LEGOGROUP0000948-956, Martin Dep. Ex. 3) at LEGOGROUP0000951.

**Response:** Objection; ¶ 56 is immaterial. Admitted only the LEGO Group marketed the Set to adults who were fans of *Queer Eye* and the LEGO Group and building with LEGO bricks.

56.     Defendants ████████████████████████████████████ Pl.'s Ex. 1 (Ashton Dep. Vol. II) at 158:7-25, 178:1-179:23.

**Response:** Objection; ¶ 56 is immaterial. Admitted only the LEGO Group received endorsements of the Set from <u>all</u> of the *Queer Eye* Fab 5 Artists (Porowski, Brown, France, Van Ness, and Berk). Brunau Decl. Ex. 7 (Building Instructions).

Respectfully submitted,

By:   */s/ Andraya P. Brunau*
　　　Elizabeth A. Alquist (ct15643)
　　　Andraya Pulaski Brunau (ct29715)
　　　Caitlin M. Barrett (ct31379)
　　　Day Pitney LLP
　　　Goodwin Square
　　　225 Asylum Street
　　　Hartford, CT 06103-1212
　　　Telephone: (860) 275-0137
　　　Facsimile:  (860) 881-2456
　　　*eaalquist@daypitney.com*
　　　*abrunau@daypitney.com*
　　　*cbarrett@daypitney.com*

　　　*Attorneys for Defendants LEGO Systems,*
　　　*Inc. and LEGO System A/S*

## **CERTIFICATION**

I hereby certify that on February 28, 2025, a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Andraya P. Brunau*
Andraya Pulaski Brunau