**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

JAMES CONCANNON,
Plaintiff,

v.

LEGO SYSTEMS, INC. and
LEGO SYSTEM A/S,
Defendants.

Case No. 3:21-cv-01678-OAW

October 5, 2026

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR RECONSIDERATION**

## I. INTRODUCTION

Plaintiff respectfully seeks reconsideration of one narrow portion of the Court's September 27, 2026 Ruling: the grant of summary judgment on Count Four. The Ruling carefully considered the Polaroid factors and resolved much of the trade-dress analysis in Plaintiff's favor or for trial. It found genuine issues of fact as to the strength of Plaintiff's trade dress and the similarity of the products, found that the bad-faith factor favors Plaintiff, and noted Defendants' concession that they deliberately copied the Porowski Jacket to create the Minifigure Jacket. ECF No. 159 at 28, 30. The Court also found evidence that people believed Plaintiff had "collaborated in [the Set's] design," id. at 29, and acknowledged that consumers might view the Minifigure Jacket as reflecting Plaintiff's "endorsement or collaboration," potentially affecting their decision to purchase the Set, id. at 31.

The narrow reconsideration issue is the legal significance of those last findings. The Ruling treated the collaboration evidence as not showing actual confusion because no one believed Plaintiff had produced the Set, and its ultimate conclusion asked whether consumers might believe Plaintiff had produced the Minifigure Jacket. Id. at 29, 31–32. Controlling Second Circuit authority holds that the Lanham Act reaches a broader category of confusion, including whether consumers mistakenly believe the plaintiff sponsored, endorsed, approved, or is affiliated with the defendant's

use. Because that distinction was squarely presented by both sides and could alter the result, reconsideration is appropriate under Local Rule 7(c).

**II. RECONSIDERATION STANDARD**

Local Civil Rule 7(c) requires a motion for reconsideration to identify controlling decisions or data the Court overlooked. The Second Circuit likewise instructs that reconsideration is appropriate where the movant identifies “controlling decisions or data that the court overlooked” that “might reasonably be expected to alter the conclusion reached by the court.” *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Plaintiff recognizes that this is a strict standard. This motion does not seek to relitigate the Polaroid analysis or present a new theory; it asks only that the Court apply controlling Second Circuit law to a form of confusion the Court’s own findings recognize.

**III. CONTROLLING SECOND CIRCUIT LAW TREATS SPONSORSHIP, AFFILIATION, AND APPROVAL CONFUSION AS ACTIONABLE**

The most direct authority is *International Information Systems Security Certification Consortium, Inc. v. Security University, LLC*, 823 F.3d 153 (2d Cir. 2016). There, the district court treated source confusion as the only legally relevant confusion. The Second Circuit held that approach was incorrect and found that Lanham Act protection “is not exclusively limited for any type of mark” to source confusion, and the infringement inquiry also encompasses confusion as to sponsorship, affiliation, or connection. Id. at 161–62. The court emphasized that Section 43(a) makes this broader protection express by reaching confusion as to affiliation, connection, association, sponsorship, or approval. Id. at 162–63. Because the district court had applied an unduly narrow conception of confusion, the Second Circuit vacated summary judgment on the infringement and false-designation claims and remanded for reconsideration of the likelihood-of-confusion analysis under the proper framework. Id. at 163, 169–70.

That holding rests on a long line of Second Circuit authority. A consumer "need not believe that the owner of the mark actually produced the item and placed it on the market"; a mistaken belief that the owner sponsored or approved the use is sufficient. *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 204–05 (2d Cir. 1979). Similarly, in *Weight Watchers International, Inc. v. Luigino's, Inc.*, 423 F.3d 137 (2d Cir. 2005), the packaging made clear that Luigino's was the source of the frozen meals, yet the court still recognized actionable confusion as to whether Weight Watchers had endorsed the products. Id. at 144; *see also Int'l Info. Sys.*, 823 F.3d at 162–63. And in *Lois Sportswear*, the Second Circuit explained that labeling may prevent consumers from believing the senior user manufactured the junior user's goods while doing nothing to dispel the mistaken belief that the senior user is associated with the junior user or consented to the challenged use. 799 F.2d at 872–74.

The principle is particularly apt here because the challenged product is a toy depicting Plaintiff's design. The Second Circuit has held that a rights holder need not itself manufacture the defendant's toy product for sponsorship confusion to be actionable. *Warner Bros., Inc. v. Gay Toys, Inc.*, 658 F.2d 76, 79 (2d Cir. 1981). The question is not limited to who physically made the product; it includes whether consumers believe the use was authorized, sponsored, or approved.

## IV. APPLYING THAT LAW TO THE COURT'S EXISTING FINDINGS WARRANTS A TRIAL ON COUNT FOUR

The sponsorship-and-affiliation theory was squarely before the Court. Plaintiff argued that confusion includes whether consumers believe the trade-dress owner "sponsored, endorsed, or otherwise approved" the challenged use and, relying on *Lois Sportswear*, whether consumers would believe Plaintiff was associated with Defendants or had consented to their use. ECF No. 156 at 34–35. Defendants used the same legal frame, arguing first that no consumer believed the Set was "sponsored by or affiliated with" Plaintiff, ECF No. 150 at 37, and on reply that no consumer believed it was "created by or affiliated with Concannon," ECF No. 151 at 10.

Reconsideration therefore would apply the theory the parties actually litigated, not inject a new one.

The Court's findings identify evidence that bears directly on that theory. On actual confusion, the Court found that individuals who congratulated Plaintiff did not believe he produced the Set; rather, "they believed he had collaborated in its design." ECF No. 159 at 29. Under *International Information Systems*, *Dallas Cowboys*, and *Lois Sportswear*, that mistaken belief of collaboration is not outside the Lanham Act simply because those individuals understood LEGO to be the manufacturer. Indeed, *Hormel Foods Corp. v. Jim Henson Productions, Inc.* treated sponsorship confusion as the relevant inquiry in assessing actual confusion and found the factor lacking because there was no evidence that anyone believed the challenged character was sponsored by Hormel. 73 F.3d 497, 504–05 (2d Cir. 1996). Here, the Court found evidence of the opposite kind, a mistaken belief that Plaintiff collaborated in the Set's design. That evidence is sufficient for a reasonable jury to find actual confusion as to affiliation or sponsorship, even if those consumers knew LEGO manufactured the Set. At a minimum, the actual-confusion factor should not favor Defendants merely because the evidence showed collaboration rather than source confusion. Defendants themselves had argued that the relevant question included whether consumers believed the Set was sponsored by or affiliated with Plaintiff. ECF No. 150 at 37.

The same distinction matters to the Court's reliance on LEGO branding and consumer sophistication. The Court acknowledged that an astute consumer might see Plaintiff's trade dress clearly depicted in the Minifigure Jacket and mistakenly believe that it represented Plaintiff's "endorsement or collaboration," causing the consumer to purchase the Set. ECF No. 159 at 31. The relevant question is therefore not simply whether a careful consumer would know that LEGO manufactured the Set. It is whether that consumer would know that Plaintiff did not authorize, endorse, or collaborate in the use of his trade dress. *See Guthrie Healthcare Sys. v. ContextMedia,*

*Inc.*, 826 F.3d 27, 43–44 (2d Cir. 2016) (explaining that even sophisticated consumers may lack reason to know whether the junior user's activities are affiliated with the senior user). *Weight Watchers* is similarly instructive. Although consumers knew Luigino's made the meals, they still could believe Weight Watchers endorsed them. 423 F.3d at 144. And *Lois Sportswear* rejected the notion that labeling necessarily disposes of confusion where consumers may infer association or consent. 799 F.2d at 872–74. On this record, sophistication about who made a LEGO product does not eliminate a triable issue over whether consumers believed Plaintiff approved or collaborated in LEGO's use of his trade dress.

Plaintiff does not ask the Court to revisit every Polaroid factor. But those factors are not dispositive of the distinct sponsorship-and-affiliation inquiry simply because Plaintiff does not manufacture toys. See *Warner Bros.*, 658 F.2d at 79. Nor should the ultimate inquiry turn on a numerical tally of the factors. The Second Circuit repeatedly has emphasized that Polaroid is not mechanical and instead focuses on whether consumers are likely to be confused in the circumstances presented. See *Kelly-Brown v. Winfrey*, 717 F.3d 295, 307 (2d Cir. 2013); *Int'l Info. Sys.*, 823 F.3d at 160–61.

Here, the existing record permits a reasonable jury to find actionable sponsorship or affiliation confusion. The Court found genuine issues of fact as to strength and similarity, found that bad faith favors Plaintiff, and noted Defendants' deliberate copying. ECF No. 159 at 28, 30. It also identified a mistaken belief that Plaintiff collaborated in the design and expressly recognized possible endorsement or collaboration affecting a purchase. Id. at 29, 31. Under the controlling cases, those findings have significance beyond whether consumers believed Plaintiff himself manufactured a LEGO product.

**V. CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court reconsider the portion of its September 27, 2026 Ruling granting summary judgment on Count Four and, upon reconsideration, deny Defendants' motion for summary judgment as to that claim.

Respectfully submitted,

**/s/ Vivek Jayaram**
Vivek Jayaram (pro hac vice)
Palak Patel (pro hac vice)
JAYARAM PLLC
54 W. 21st Street, Suite 801
New York, NY 10010
Telephone: (312) 212-8676
E-mail: vivek@jayaramlaw.com
E-mail: palak@jayaramlaw.com

Attorneys for Plaintiff James Concannon

**CERTIFICATE OF SERVICE**

I hereby certify that on October 5, 2026, the foregoing Motion for Reconsideration and accompanying Memorandum of Law were filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent by operation of the Court's CM/ECF system to all registered counsel of record, and any other party will be served in accordance with Federal Rule of Civil Procedure 5.

**/s/ Vivek Jayaram**

Vivek Jayaram